## CIRCUIT COURT OF LOUDOUN COUNTY

Constance M. Barton et al.

v.

Town of Middleburg et al.

Case No. (Chancery) 13721

By JUDGE JAMES H. CHAMBLIN

December 4, 1991

This cause is before the Court on the Demurrers of the Town of Middleburg ("Town") and the Town Council of the Town of Middleburg ("Town Council") and John S. Pettibone, Jr., and Susan N. Pettibone. The Court heard oral argument on October 10, 1991, and has considered the memoranda filed by counsel.

For the reasons hereinafter set forth, the Demurrers are overruled because the Complainants have stated a cause of action and they have standing. They have failed to allege any ordinance violation except in Counts III and IV, and the Demurrers are sustained and overruled accordingly. The Demurrers are overruled on the grounds of failure to place the entire record before the Court and a misjoinder of the Town and the Town Council.

In this cause, the Complainants, Constance M. Barton, Walter C. Harris and Debra G. Harris, and Jean P. Partridge (the Court is aware that she has resumed her former name of Perrin), challenge the approval by the Middleburg Town Council on June 13, 1991, of the "Open Space and Site Plan" (the "site plan") for "Fox Run of Middleburg" (the "Project" or "Fox Run"). As counsel do not assert otherwise, the Court construes the site plan to be a site plan as defined and referred to in Article 7 of Title 15.1 of the Virginia Code

and the applicable provisions of the ordinances of the Town of Middleburg.

As revealed by the allegations of the Bill of Complaint, which are admitted as true on demurrer, this litigation is a sequel to a prior challenge by two of these Complainants and others to the validity of a rezoning of the Fox Run property to R-4. *See, Clark v. Town of Middleburg*, Chancery No. 12718. This Court upheld the validity of the rezoning, and this decision was affirmed when the Supreme Court denied a petition for appeal on August 6, 1991.

The property was rezoned in April, 1990, from R-A to R-4 with certain proffers. *See* Exhibit A to the Bill of Complaint. In June, 1990, the Pettibones filed a site plan providing for the construction of 48 residential units. On December 13, 1990, the Town Council approved a revised preliminary plan conditioned upon certain suggested modifications as set forth in a "Staff Report" dated December 5, 1990. *See* Exhibit B to the Bill of Complaint.

Thereafter, the Pettibones filed the subject site plan. The Planning Commission recommended approval thereof on January 23, 1991. After some other modifications, the site plan (dated June 25, 1990, revised February 13, 1991) was approved, subject to certain conditions, by the Town Council on June 13, 1991, by a 6 to 1 vote.

The most significant aspect of the site plan is that it calls for the development of the Project by the construction of 48 condominium units. The Project is not a subdivision but a single parcel of land to be developed with condominium units.

I. *Failure to State A Cause of Action and Complainants Lack of Standing*

The Defendants, for various reasons, assert that the Complainants have no cause of action or standing to challenge the approval of the site plan.

Virginia Code § 15.1–475 sets forth a procedure whereby an applicant can have a circuit court review on appeal the disapproval of the site plan. Section 15.1–475 confers the right to appeal only upon the applicant. There is no language giving such right to appeal to a circuit court to a third party or even an "aggrieved" party as provided, for example, in § 15.1–497 (certiorari to review a decision of board

of zoning appeals) or § 15.1–496.1 (appeal to board of zoning appeals of a decision by a zoning administrator or other officer). Section 15.1–475 does not give the Complainants a cause of action.

Complainants have not cited, and I feel that is true because they cannot cite, any specific statute or ordinance giving them a cause of action for challenging the site plan approval. The Complainants have no specific statutorily-created cause of action for such a challenge.

The Pettibones also argue that the "Staff Report" constitutes a decision of the zoning administrator or other administrative officer in the administration or enforcement of Article 8 of Title 15.1 of the Virginia Code and the Town ordinances adopted pursuant thereto and is, therefore, subject to the appeal provisions of § 15.1–496.1 to the board of zoning appeals. The Complainants did not affect such an appeal; therefore, the Defendants assert that the ruling is final as to the Complainants. The "Staff Report" is an exhibit to the Bill of Complaint, but there is no indication of its author or, even, the nature of the staff which submitted the report. Considering the few allegations concerning the report in the Bill of Complaint, this Court cannot find as a fact or even as a reasonably implied or inferred fact, that the report is a decision subject to the provisions of § 15.1–496.1.

Having no specific statutory cause of action, the only possible basis upon which the Complainants could bring this suit would be pursuant to the Declaratory Judgment Act, § 8.01–184 *et seq.* Under § 8.01–184, the interpretation of municipal ordinances is a specifically enumerated instance of an actual antagonistic assertion and denial of right. Here the Complainants clearly allege that the approval of the site plan violates ordinances of the Town of Middleburg. Hence, this case is a proper one for review in a declaratory judgment proceeding. The Complainants have stated a cause of action.

Standing requires a person who files a suit asserting a particular position has a substantial legal right to do so and his rights will be affected by the disposition of the case. The Virginia Supreme Court has stated:

> In asking whether a person has standing, we ask, in essence, whether he has a sufficient interest in the subject matter of the case so that the parties will be actual adversaries and the issues will be fully and faithfully developed.

*Cupp v. Board of Supervisors*, 227 Va. 580, 589 (1984).

The United States Supreme Court has described standing as follows:

> The essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have "alleged such *a personal stake in the outcome of the controversy* as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions."

*Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 72 (1978) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962) (emphasis added).

I am of the opinion that the owner of land adjacent to the land on which a site plan has been approved has "a personal stake in the outcome of the controversy" over whether the approval violated certain ordinances.

Accordingly, the Demurrers are overruled on these grounds.

II. *Failure of Bill of Complaint to Place Complete Record Before the Court*

The Bill of Complaint does not incorporate by reference all of the site plan. Exhibit C contains only 2 of 12 sheets. The Complainants allege that the Town Council approved the site plan "subject to certain conditions" (Paragraph 7), but no copy of the resolution is attached to the Bill of Complaint and the "certain conditions" are not alleged.

On a demurrer, the Court must decide whether the pleading states a cause of action or whether it states facts on which the relief demanded can be granted. Virginia Code § 8.01–273. I am of the opinion that a simple assertion of the failure to allege other facts is not a ground for a demurrer. However, the failure to allege certain facts is certainly a consideration in determining whether the facts alleged can cause the pleading to survive a demurrer. In ruling on a demurrer, the Court must decide it based on what is alleged and cannot consider what the demurrant feels should have been alleged.

The Demurrers are overruled on this ground.

III. *Joinder of Both the Town of Middleburg and Its Town Council as Defendants*

The Demurrers are overruled on this ground for the same reasons as stated in this Court's opinion letter of June 8, 1990, in *Clark v. Town of Middleburg*, Chancery No. 12718.■

IV. *Alleged Ordinance Violations: "Substantive Issues"*

The defendants demur to the ordinance violations alleged in Counts I through IV.

For the reasons hereinafter set forth, I am of the opinion that the Complainants have only alleged an ordinance violation in Counts III and IV.

The gravamen of the Complainants' cause is that Fox Run is given more favorable treatment as a condominium development than if it had been a subdivision or a multi-family rental project. In argument, they call it "reverse discrimination" caused by the violation of certain ordinance provisions when the Town Council approved the site plan.

Each alleged ordinance violation is addressed below.

A. *Alleged Zoning Ordinance Violations*

These are set forth in Paragraph 9 of the Bill of Complaint. In Paragraph 9(A), the Complainants allege that the site plan violates several Middleburg Zoning Ordinance ("MZO") provisions by not showing that each dwelling unit is located on a lot of at least 2000 square feet. MZO Section 9–2–1 provides:

> Each townhouse or multi-family dwelling unit hereafter erected, together with its accessory buildings, shall be located on a lot having a net area of at least two thousand (2,000) square feet *per dwelling unit.* (Emphasis in ordinance itself.)

The Complainants misread this provision. It merely provides that each townhouse (the dwelling units in Fox Run are townhouses) shall be on a lot having a net area of at least 2,000 square feet for each dwelling unit. It does *not* require that there be one townhouse per lot. If it required one townhouse per lot, then townhouses could only be built in subdivisions. There is no ordinance limiting townhouses to a subdivision only.

The Complainants connect their "one townhouse on a lot of at least 2000 square feet" argument with an assertion that MZO Sec-

tion 3–50 (the definition of "lot") requires only one building per lot. Although "lot" is defined in terms of being occupied "by a building and its accessory building" (defined in the singular), the first paragraph of Article 3 of the MZO provides that "the singular number includes the plural number." Further, the Town ordinances recognize the possibility of condominium developments which by their very nature can be constructed on one lot. There is no requirement in any ordinance that an individual dwelling unit, regardless of its nature or form of ownership, must be located on its own lot.

For similar reasons, the Complainants' assertion in Paragraph 9(B) that the site plan fails to show that not more than 50% of the net area of a lot is covered by buildings (a requirement of MZO Section 9–2–1) must fail because there is no one building per lot requirement.

The yard setback violations alleged in Paragraph 9(C) are not violations of the MZO because the Project is treated as being on one lot, and the setback requirements have been met as addressed in the "Staff Report."

As to Paragraph 9(D), there is no requirement that the height limitations be set forth in the site plan. The buildings, of course, are subject to the height limitations of MZO Section 9–5.

The assertions of more than allowable density (Paragraph 9(E)) and allowing a non-permitted agricultural use in a R-4 zone (Paragraph 9(F)) were both resolved in favor of the Town in Chancery No. 12718 and cannot be relitigated in this cause.

B. *Alleged Subdivision Ordinance Violations*

These are set forth in Paragraph 12. In Paragraph 12(A), the Complainants complain that the Town Council refused to apply the setback requirements of the Middleburg Subdivision Ordinance (MSO) as would have to have been applied if the Project were a fee townhouse development. This argument is created by the provision of MSO I(A) which states:

> This Ordinance [the MSO] shall apply to any condominium development in the same manner as it would to a physically identical project or development under a different form of ownership.

This provision was added to the MSO in 1985 because of Virginia Code Section 55–79.43, which provides in part as follows:

> Subdivision and site plan ordinances in any county, city or town in the Commonwealth shall apply to any condominium in the same manner as such ordinances would apply to a physically identical project or development under a different form of ownership.

This provision is now part of § 55–79.43(B). The defendants argue that the Court should also consider the last phrase of that section which became effective July 1, 1991. It is not applicable because it became law after the Town Council approved the site plan, and there is no indication that the legislature intended that the provision be retroactive.

This is the essence of the Complainants' "reverse discrimination" argument. The Complainants complain because the Pettibones are able to develop their land as a condominium without complying with the ordinance requirements if they had decided to subdivide their property for townhouses. The Complainants feel that MSO I(A) requires the Town to consider a condominium development as a subdivision. It does not because of, at least, one simple reason, i.e., a condominium development on one lot is not physically identical to a townhouse subdivision development with multiple lots. The existence of a different number of lots makes the two not physically identical.

The purpose of Code § 55–79.43 and MSO I(A) is to prevent the Town from applying stricter standards for a condominium than a physically identical development under a different form of ownership. The aforesaid statute and ordinance do not mean that a condominium project must meet all the requirements of a subdivision project. The intent thereof is to assure a condominium developer that in no event will his project be held to standards higher than those for a subdivision.

Paragraphs 12(B), 12(C), 12(D), and 12(E) are alleged violations if the Project were considered a subdivision. They are not applicable because the Project is not a subdivision.

C. *More Than One Building Per Lot*

Count II asserts that the site plan violates MZO Section 3–50 which only allows one building per lot. For reasons stated above, none of the Town's ordinances require only one building per lot.

D. *Alleged Violation of Street and Parking Ordinance and its Townhouse/Multi-Family Private Accessory Standards*

Count III alleges three violations of the private accessway standards. The defendants do not contest that such standards are applicable to Fox Run.

Paragraph 15(A) asserts that the width of the access easement is required to be 36 feet pursuant to Section 9.17 of the Middleburg Street and Parking Ordinance ("MSPO"), but the maximum width of any such easement as shown on the site plan appears to be only 24 feet at most. A review of Exhibit C to the Bill of Complaint appears to show the accessways only 24 feet wide. MSPO Section 9.17 requires the "access easement in which an accessway is located . . . . be a minimum of 36 feet wide along the entire width of the street." MSPO Section 9.17 does not specify that such width be only at a point of access to a public street. Paragraph 15(A) alleges a violation of MSPO Section 9.17.

Paragraph 15(B) does not allege a setback violation because of reasons stated above. This development concerns one lot and not multiple lots on a private accessway.

Paragraph 15(C) alleges a violation of MSPO Section 9.1 which provides that accessways shall be allowed only where a traffic volume of 245 VPD ("vehicles per day, projected traffic count") or less is projected. Exhibit C shows a total traffic count of 336 VPD which exceeds 245 VPD. The defendants attempt to circumvent the 245 VPD maximum by assigning (*see* Exhibit C) without explanation 175 VPD to 25 units and 161 to 23 units. Exhibit C shows an accessway called "Fox Run Terrace" running continuously without interruption between Marshall Street and Jay Street when MSPO Section 9.1 clearly states that an accessway cannot serve as a through street. A violation of MSPO Section 9.1 is alleged.

The Complainants have alleged two ordinance violations in Count III.

E. *The Site Plan Violates the Proffers*

Count IV alleges that the site plan violates the proffers pursuant to which the property was rezoned to R-4. Proffer (1) requires that the property be developed consistent with Town ordinances. To the extent the Complainants have alleged ordinance violations as stated above, they have stated a violation of a proffer in Paragraph 16 of the Bill of Complaint.

A violation of a proffer must be considered as equivalent to a violation of a zoning ordinance. The Complainants have stated such a cause of action as to the alleged proffer violations in Count IV.

The Demurrers are sustained as to Counts I and II but overruled as to Counts III and IV.

### V. *Decree*

Let counsel for the defendants collaborate on a decree consistent herewith granting the Complainants leave to file an Amended Bill of Complaint on or before December 20, 1991, with responsive pleadings to be filed within 21 days thereafter.

June 2, 1992

This cause is before the Court on the complainant's Motion for Partial Summary Judgment filed February 28, 1992, and the Motion for Summary Judgment filed on May 4, 1992, by the defendants. John S. Pettibone, Jr., and Susan W. Pettibone. The Court heard oral argument on both motions on May 18, 1992.

At oral argument, the parties agreed that the twelve sheets tendered to the Court that day constitute the final site plan as approved by the Town Council of Middleburg on June 25, 1990.

For the reasons hereinafter set forth, both motions are denied.

Before arguing the motions, counsel for the complainants pointed out that the Pettibones have not filed an answer. He argues that because the Pettibones have not filed an answer, the parties are not at issue and no summary judgment can lie under Rule 2:18. I disagree as long as the motion for summary judgment is not a substitute for a demurrer, i.e., it attacks the legal sufficiency of a pleading. The purpose of a motion for summary judgment is to end litigation at an early stage when it appears through the pleadings, orders or admissions in the proceeding that no material fact is genuinely in dispute. It is unlike a demurrer because of the lack of finality in sustaining a demurrer as a pleading could be amended to overcome a demurrer. *See, Carwile v. Richmond Newspapers*, 196 Va. 1, 5–6 (1954). Neither motion is a substitute for a demurrer. The Court will hear both motions.

### *Complainant's Motion for Partial Summary Judgment*

The complainants ask the Court to grant them summary judgment on the issues for which the Court determined that they had stated a

cause of action in their Bill of Complaint when it ruled on the defendant's demurrers thereto in the opinion letter dated December 4, 1991, as follows:

1. That the approved site plan violates the Middleburg Street and Parking Ordinance ("MSPO") Section 9.17 minimum access easement width requirement;

2. That the site plan violates MSPO Section 9.1 by exceeding the minimum vehicles per day, projected traffic count; and

3. That the site plan violates proffer (1) requiring that the property be developed consistent with Town ordinances.

In overruling the demurrers on these issues, this Court merely found that the complainant's had stated a cause of action as to each issue. Counsel for the complainants seem to overlook the fact that the defendants should have the opportunity to put on whatever evidence they may want as to other relevant facts and to argue whether or not there has been an ordinance violation. The complainants' motion raises factual issues that must be a matter of proof at trial. The defendants have not conceded that the complainants' interpretation and application of the ordinances to the site plan are correct. Further, because the complainants have not admitted that the Pettibones diligently pursued the final site plan, this Court cannot on a summary judgment motion decide the vested rights issue in this case.

The complainants' Motion for Partial Summary Judgment is denied.

### Pettibones' Motion for Summary Judgment

The Pettibones seek summary judgment on various issues in this cause as follows:

1. That they have a vested right to develop the property consistent with the proffered plan;

2. That the approval of the final site plan is not consistent with MSPO Section 9.17;

3. That proffer (1) does not require compliance with the subsequently adopted MSPO; and

4. That the provisions of the proffered plan control over MSPO Section 9.1.

The vested rights issue cannot be decided for the same reasons as stated above as to the complainants' Motion for Partial Summary Judgment. The other three issues are factual issues that must be re-

solved based on all the evidence presented by all parties. The application of the relevant ordinances and how compliance with such ordinances is determined is obviously the subject of disagreement among the parties. The issues involved in this cause need to be resolved by a full hearing on the merits, and not by summary judgment.

The Pettibones' Motion for Summary Judgment is denied.