**Richmond**

ENVIRONMENTAL DEFENSE FUND

v.

VIRGINIA STATE WATER CONTROL BOARD, et al.

No. 0824-90-2

Decided May 7, 1991

COUNSEL

David S. Bailey, for appellant.

J. Steven Sheppard, III, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee State Water Control Board.

Daniel L. Fitch (George H. Roberts, Jr.; Wharton, Aldhizer & Weaver, on brief), for appellees Rocco Farm Foods, Inc., Rocco Realty, Inc. and Mountain View Rendering Company.

OPINION

COLE, J.*—The appellant, Environmental Defense Fund, filed two cases in the Circuit Court of the City of Richmond designated as Chancery No. N-7848-2 (referred to herein as Rocco 1) and N-8078-3 (referred to herein as Rocco 2).

This appeal is from two orders sustaining the demurrers of appellees based on a finding that the Environmental Defense Fund ("EDF") is without standing to challenge certain actions by the

---

* Judge Cole prepared and the Court adopted the opinion in this case prior to the effective date of his retirement on April 30, 1991.

State Water Control Board ("Board"). On appeal, the issues are: (1) whether Code § 9-6.14:16 of the Virginia Administrative Process Act ("VAPA") affords EDF a right of judicial review in addition to that provided for in Code § 62.1-44.29; (2) whether EDF lacked standing under the applicable provision to seek judicial review of the Board's case decision; (3) whether the Board's internal memorandum was improperly applied as a rule or regulation; and (4) whether the Board's denial of EDF's request for a formal hearing was proper. We find that EDF lacked standing. Therefore, we affirm the decisions of the trial court.

Rocco Farm Foods, Inc., Rocco Realty, Inc. and Mountain View Rendering Co. (collectively "Rocco") own and operate a poultry processing plant and a wastewater treatment facility in Shenandoah County, Virginia. This facility discharges treated effluent into Stony Creek, a tributary of the north fork of the Shenandoah River. On June 27, 1988, the Board reissued Rocco's Virginia Pollutant Discharge Elimination System ("VPDES") permit, to be effective September 1, 1988. The VPDES permit placed limits on the amount of effluent which could be discharged into Stony Creek.

On July 22, 1988, after the permit was issued, the Board's staff issued an internal memorandum to all regional directors entitled "Flow Tiered VPDES Permit" ("Memorandum"). The Memorandum allowed for the issuance of flow-tiered VPDES permits. VPDES permits allow differing amounts of effluent to be discharged in correlation with the changes in river flow rates. For example, lower amounts of effluents could be discharged when river flow was the lowest, in the dry season, but higher amounts could be discharged in the rainy season when river flow was higher.

By letter dated September 15, 1988, Rocco petitioned the Board to amend its VPDES permit, which limited emission based on a single yearly low river value, to a flow-tiered permit. On November 8 and 15, 1988, the Board published public notice of Rocco's application for the modification of its VPDES permit. Several citizens and interest groups, including EDF, expressed concerns over the draft permit. In response, the Board conducted a public hearing in Woodstock, Virginia, on February 28, 1989. EDF attended that meeting and made comments. Additionally, EDF submitted written comments for the Board's consideration.

The Board authorized reissuance of the amended permit at the meeting on March 21, 1989. The amended permit became effective on April 28, 1989. On April 18, 1989, EDF requested a formal hearing in connection with the Board's decision to amend the permit.

On July 21, 1989, EDF filed an appeal in the Circuit Court of the City of Richmond challenging the Board's decision to amend the VPDES permit (Rocco 1). EDF asserted that the Memorandum was improperly applied as a rule or regulation, although it had not been promulgated in accordance with the VAPA. *See* Code § 9-6.14:4 (defining the terms "rule" and "regulation"). Also, EDF alleged that, in relaxing the VPDES limitations, the Board violated the "anti-backsliding" provisions of the Board's regulations and federal law.

On June 16, 1989, the Board denied EDF's request for a formal hearing. In its letter denying EDF's petition for formal hearing, the Board stated that EDF was without standing to request a formal hearing. Also, the Board stated that EDF had not raised any genuine and substantial legal issues warranting a formal hearing. In a separate cause of action, EDF appealed this denial to the Richmond Circuit Court alleging that the Board's action was arbitrary and in violation of its own procedural rules (Rocco 2).

On December 13, 1989, both cases were heard in the circuit court on demurrers alleging that EDF lacked standing to challenge the Board's actions. Rocco became a defendant through intervention.

The trial court found that two Code provisions are involved in determining whether EDF has standing in either case: Code §§ 9-6.14:16 and 62.1-44.29. The trial court held that EDF could appeal under Code § 9-6.14:16 even if appeal was unavailable under Code § 62.1-44.29 because the latter does not "specifically exclude appeal under the APA." Thus, EDF had standing to appeal if the court found it to be: (1) an "owner aggrieved" under Code § 62.1-44.29; (2) a "person affected by and claiming the unlawfulness of any regulation" under Code § 9-6.14:16; or (3) a "party aggrieved by and claiming the unlawfulness of a case decision" under Code § 9-6.14:16.

The trial court found that EDF was not an "owner aggrieved" under Code § 62.1-44.29 because it is not "an entity subject to the State Water Control Board's power and jurisdiction; *i.e.*, an entity which owns or operates an actual or potential discharge source or a permit issued by the Board." EDF was not a "person affected" by a regulation because in order for the Memorandum to be a regulation there must be "a promulgation by an agency." Code § 9-6.14:4. Here, the Memorandum was merely a staff memorandum which was not promulgated by the agency, and was not binding on the Board. EDF was not a "party aggrieved" because it was neither a "party" nor was it "aggrieved." The trial court found that under the Board's Procedural Rule No. 1, section 1.13, only the applicant or permittee is a party capable of appeal.[1] EDF was also not "aggrieved" by the Board's decision. The trial court noted that EDF, a non-profit environmental membership organization, appeared solely in a representative capacity for eight of its members, some of whom are riparian owners of Stony Creek and some who use the waterway for recreational purposes. The court found that EDF "does not and cannot have (in a representational capacity) the same interests as one directly affected," citing *Virginia Beach Beautification Comm'n v. Board of Zoning Appeals*, 231 Va. 415, 344 S.E.2d 899 (1986). Since the court found the EDF was without standing in both cases, the demurrers were sustained.

The first issue on appeal is whether the trial court erred in holding that Code § 9-6.14:16 afforded EDF a right of judicial review in addition to that provided in Code § 62.1-44.29.

Code § 9-6.14:16 provides:

Any *person affected* by and claiming the unlawfulness of a regulation, or *party aggrieved* by and claiming unlawfulness of a case decision . . . shall have a right to direct review thereof . . . in the manner provided by the Rules of the Supreme Court of Virginia. (emphasis added).

Code § 62.1-44.29 provides:

---

[1] Procedural Rule No. 1, section 1.13 provides:
The applicant or permittee shall be a party to the public hearing. All other persons who desire to submit written or oral factual data arguments or proofs may do so, subject to the terms of the hearing notice and the applicable provisions of this section.

(1) Any *owner aggrieved* by a final decision of the Board under §§ 62.1-44.15(5), 62.1-44.15(8a), (8b), and (8c), 62.1-44.16, 62.1-44.17, 62.1-44.19 or § 62.1-44.25, whether such decision is affirmative or negative in form, is entitled to judicial review thereof in accordance with the provisions of the Administrative Process Act. (emphasis added).

To determine how the standing requirements in the basic law[2] and the VAPA interrelate, the trial court referred to the statutorily declared policy of the VAPA. Code § 9-6.14:3 provides:

The purpose of this chapter is to supplement present and future basic laws conferring authority on agencies either to make regulations or decide cases as well as to standardize court review thereof save as laws hereafter enacted may otherwise expressly provide. This chapter does not supersede or repeal additional procedural requirements in such basic laws.

The trial court found that appeal was available under Code § 9-6.14:16, even if unavailable under Code § 62.1-44.29, because the basic law did not "specifically exclude the APA appeal." This was error.

 Code § 9-6.14:16 does not supplement Code § 62.1-44.29 because the latter is not a "basic law conferring authority on agencies either to make regulations or decide cases." Code § 62.1-44.29 is a statute providing for judicial review. The purpose of Code § 9-6.14:16 is to "standardize court review . . . *save as laws hereafter enacted may otherwise expressly provide.*" Code § 9-6.14:3 (emphasis added). The basic law does not, contrary to the trial court's view, have to "specifically exclude the APA appeal."[3] Code § 9-6.14:16 gives deference to provisions of the basic law, such as Code § 62.1-44.29, which make express provisions

---

[2]   Code § 9-6.14:4 provides:
"Basic law" or "basic laws" means provisions of the Constitution and statutes of the Commonwealth of Virginia authorizing an agency to make regulations or decide cases or containing procedural requirements therefor.
The "basic law" in this appeal is the State Water Control Law. Code §§ 62.1-44.2 *et seq.*
[3]   The trial court may have been considering Code § 9-6.14:15 which provides for certain exclusions to court review under the VAPA. This section provides:
This article [providing for court review] does not apply to any agency action which (1) is placed beyond the control of the courts by constitutional or *statutory provisions expressly precluding court review.* (emphasis added).

for standing. This construction is supported by the concluding sentence of § 9-6.14:3 which states, "This chapter *does not supersede or repeal additional procedural requirement in such basic laws.*" (emphasis added). This statement would be mere surplusage under the construction given Code § 9-6.14:16 by the trial court.

■ The trial court's construction of Code § 9-6.14:16 also assumes that in retaining the "owner aggrieved" requirement in Code § 62.1-44.29 the legislature intended "to do a vain and useless thing." *See Williams v. Commonwealth*, 190 Va. 280, 293, 56 S.E.2d 537, 543 (1949). The "owner aggrieved" requirement is a more restrictive standard than "person affected" or "party aggrieved." Had the legislature intended review to be standardized under Code § 9-6.14:16, it would have deleted the "owner aggrieved" requirement, as it deleted specific requirements in other sections.[4]

■ We hold that where the basic law contains a specific standing requirement, such as that contained in Code § 62.1-44.29, this requirement is controlling over the standardized court review in Code § 9-6.14:16. Thus, in determining whether EDF had standing to appeal, review is limited to whether EDF is an "owner aggrieved" under Code § 62.1-44.29.

As the Revisors' Note explains, "The first of the exclusions in § 9-6.14:15 is a necessary recognition that the makers of constitutions and statutes may, if they wish, exclude courts from participating in administrative justice in the rare instances in which they elect to do so." *See also Virginia Alcoholic Beverage Control Comm'n v. York Street Inn, Inc.*, 220 Va. 310, 313, 257 S.E.2d 851, 853 (1979). In referring to "agency action," this exclusion is directed toward certain subject matters which are placed beyond the control of the courts, such as review of applications for liquor license at the time of *York Street Inn. Id.* at 313, 257 S.E.2d at 853 (citing Code § 4-31(f) (this statute has since been amended to authorize judicial review)). However, this statute has no application to the issue of standing. It is not addressed to party preclusion.

[4] For example, Code § 62.1-44.24, which provides for the judicial review of the validity of regulations, previously granted review to "any owner who might be adversely affected." The 1986 amendments rewrote the section. It now simply states, "The validity of any regulation may be determined through judicial review in accordance with the Administrative Process Act." *See generally* Jones, *Administrative Law: Annual Survey of Virginia Law*, 20 U. Rich. L. Rev. 673, 674-80 (1986). The State Water Control Law is an example of specific limits in standing that remain intact after the 1986 amendments. *Id.* at 680 n.45. Code § 62.1-44.29 was amended in 1986; however, the section retained the "owner aggrieved" requirement.

■ The trial court interpreted "owner," as defined in Code § 62.1-44.3(5),[5] to mean "any entity subject to the State Water Control Board's power and jurisdiction; *i.e.*, any entity which owns or operates an actual or potential discharge source or a permit issued by the Board." Under this definition, the trial court found that EDF is not an "owner aggrieved" and had no standing to appeal. The correctness of the trial court's construction is evidenced by the 1990 amendment to Code § 62.1-44.3(5), which added the limitation: "that owns, operates, charters, rents, or otherwise exercises control over or is responsible for any actual or potential discharge of sewage, industrial wastes, or other wastes to state waters, or any facility or operation that has the capability to alter the physical, chemical, or biological properties of state waters in contravention of § 62.1-44.5." Absent a finding that EDF is an "owner," it cannot have standing under § 62.1-44.29. Therefore, the trial court was correct in sustaining the demurrer in Rocco 1.

Since EDF was without standing to challenge the final decision of the Board, EDF is necessarily without standing to assert the underlying substantive argument that the Memorandum was improperly applied as a rule or regulation, the third issue on appeal.

The final issue raised by EDF is the propriety of the Board's denial of EDF's request for a formal hearing.[6] The Board denied EDF's petition, stating that EDF was without standing to petition for a hearing and, in any event, had failed to raise substantial issues of law or fact. The denial of this petition was appealed in the trial court in Rocco 2. The trial court found that EDF was without standing to appeal the decision of the Board. Although

---

[5]  At the time of the trial court's decision this section provided:
"Owner" means the Commonwealth or any of its political subdivisions, including, but not limited to sanitation district commissions and authorities, and public or private institutions, corporation, association, firm or company organized or existing under the laws of this or any other state or country, or any person or groups of persons acting individually or as a group.

[6]  State Water Control Board Procedural Rule 1, § 1.20 states:
A formal hearing is a public proceeding for the taking of evidence, held under § 9-6.14:12 of the law, and under this Rule. A formal hearing may be held to consider appeals from certain actions of the Board or the Executive Secretary taken without a formal hearing, as provided by § 62.1-44.25 of the Code, and may also be held for other purposes, and must be held prior to the issuance of a special order under § 62.1-44.15(8), unless the owner consents to the issuance of a special order without a hearing.

this issue was not squarely addressed by the trial·court, this finding was necessarily based on the trial court's finding that EDF had no standing under Code §§ 9-6.14:16 or 62.1-44.29.

The right to a formal hearing is governed by the VAPA and the basic law. Code § 9-6.14:12(A) provides:

> The agency *shall* afford opportunity for the formal taking of evidence upon relevant fact issues in any case in which the basic law provides expressly for decisions upon or after hearing and *may* do so in any case to the extent that informal procedures under § 9-6.14.11 have not been had or have failed to dispose of a case by consent. (emphasis added).

The basic law does not expressly provide for issuance of VPDES permits only upon or after formal hearings. Therefore, formal hearings are not mandatory under Code § 9-6.14:12. However, Code § 62.1-44.25 provides for a formal hearing for any "owner" that is aggrieved by any action taken by the Board without a formal hearing. In addition, the Board's Procedural Rule 1, § 1.23(a), provides that the "applicant or permittee or any person aggrieved" may petition for a formal hearing. The Board's Executive Secretary shall authorize a formal hearing if the petition raises "genuine and substantial issues of law or fact which, if resolved adversely to the petitioner, would result in injury to the petitioner." Procedural Rule 1, § 1.23(c)(2).

The true issue is whether EDF can appeal the denial of a request for a formal hearing to the circuit court. Appeal is unavailable under the VAPA. Code § 9-6.14:16 provides for appeal by a "party aggrieved by and claiming unlawfulness of a case decision." The denial of EDF's request for a formal hearing was not a "case decision" as that term is defined in Code § 9-6.14:4(D).[7] EDF was not a "named party" in the proceedings before the State Water Control Board.

---

[7] Code § 9-6.14:4(D) provides:
"Case" or "case decision" means any agency proceeding or determination that, under laws or regulations at the time, a *named party* as a matter of past or present fact, or of threatened or contemplated private action, either is, is not, or may be or may not be (i) in violation of such law or regulation or (ii) in compliance with any existing requirement for obtaining or retaining a license or other right or benefit. (emphasis added).

Appeal is also unavailable under the basic law. The Board's Procedural Rule 1 does not provide for appeal from such a decision. Code § 62.1-44.29 limits judicial review to any "owner aggrieved" by a decision under Code § 62.1-44.25, whether the action is affirmative or negative in form. In so doing, the legislature has limited review to "owners." As we have already determined, EDF is not an "owner" as defined by the basic law. Therefore, EDF is without standing to challenge the denial of the petition for formal hearing.

In conclusion, we hold that where there is a specific provision for standing in the basic law, that provision of basic law is controlling over the VAPA. The legislature has limited those that can appeal decisions of the State Water Control Board to "owners aggrieved." Code § 62.1-44.29. "Owner," as used in the basic law, refers to an entity exercising control over a potential discharge site. Under this definition, EDF, a non-profit environmental group, is without standing. Similarly, standing to challenge the denial of a formal hearing has been limited to "owners." Accordingly, the decisions of the trial court in sustaining the demurrers are affirmed.

*Affirmed.*

Barrow, J., and Willis, J., concurred.