**Alexandria**
CITIZENS FOR CLEAN AIR
v.
COMMONWEALTH OF VIRGINIA ex rel.
STATE AIR POLLUTION CONTROL BOARD
and
ROCKINGHAM POULTRY, INC.
No. 0468-91-4
Decided December 17, 1991

Counsel

Judith B. Henry (Martin A. Donlan, Jr.; Crews & Hancock, on brief), for appellant.

Mary Jo Leugers, Assistant Attorney General (Mary Sue Terry, Attorney General; Deborah Love Field, Assistant Attorney General, on brief), for appellee State Air Pollution Control Board.

Daniel L. Fitch (Phillip C. Stone; John W. Flora; George W. Barlow, III; Wharton, Aldhizer & Weaver, on brief), for appellee Rockingham Poultry, Inc.

OPINION

**ELDER, J.**—Citizens for Clean Air ("CCA"), an unincorporated association, appeals from a final order of the Circuit Court of the County of Rockingham sustaining the demurrers of the State Air Pollution Control Board ("Board") and Rockingham Poultry, Inc. ("Rockingham"). In their demurrers, appellees asserted that CCA lacked standing to appeal the Board's denial of CCA's petition for a formal hearing regarding issuance of an air permit to Rockingham. Finding that CCA is not an "owner" and, therefore, without standing, we affirm the decision of the trial court.

Rockingham is a Virginia corporation with an existing poultry processing facility near Timberville, Virginia, in Rockingham County. Rockingham currently operates under the requirements of an air permit issued by the Board. Under regulations promulgated by the Board, Rockingham sought a modification of its existing air permit in order to construct and operate a substantially larger rendering plant.

The Board filed copies of the permit application and a draft permit for public inspection in the Timberville town offices. Written public comments were received. In addition, a public hearing was held December 16, 1989, at which members of CCA participated. CCA describes itself as "an unincorporated association of business people and residents of the town of Timberville, Virginia, and nearby jurisdictions . . . . The Citizens own real property in the close vicinity of the proposed rendering plant." At the hearing, members of CCA offered evidence that their property and businesses have been adversely affected by odors from the existing rendering facility, and that these odors would worsen as a result of the new and larger plant, leading to a decline in both property value and the ability of members of CCA to enjoy the full use and benefit of their property. The Board issued the permit March 8, 1990.

CCA did not participate by name in the public comment opportunity following public notice of the draft permit, nor did it par-

ticipate as an association in the public hearing proceedings. In April 1990, CCA filed a petition with the Board asking for a formal hearing and claiming that it would be harmed by issuance of the permit. The only named member of CCA identified in the petition was William Seamans, described as CCA's "authorized representative."

The Board denied the petition on two grounds. First, the Board ruled that evidence to be taken at the formal hearing was irrelevant to the reconsideration sought and that the petition was not timely. Section 120-02-09 of the Board's regulations provides that a petition for a formal hearing must be filed within thirty days of notification of action taken. As a result of a clerical error, a fact appellees concede, the petition at one point identified the date of the action taken as October 5, 1987. At three other points, however, the correct date of March 8, 1990, was identified. Appellees do not dispute that the petition of April 6, 1990, was in fact timely filed.

The second ground for the Board's denial of the petition was that, in its representative capacity, CCA had no standing to appeal because it was not "aggrieved" within the meaning of the Board's administrative appeal regulations.

On August 17, 1990, CCA appealed the Board's decision to the Circuit Court of Rockingham County, alleging that the Board had erred in adopting both the first and the second ground as the basis for its denial of CCA's petition. CCA named the Board and Rockingham as appellees.

Rockingham and the Board demurred to CCA's petition for appeal, and the circuit court sustained the demurrers on standing grounds. The court ruled:

1. That CCA was not an "owner" under § 10.1-1318 of the Air Pollution Control Law;

2. That CCA was not a "party aggrieved" under § 9-6.14:16 of the Administrative Process Act of the Code of Virginia;

3. That CCA had no standing to appeal to the circuit court as an "other person aggrieved" pursuant to § 120-02-09 of the Board's Regulations for the Control and Abatement of Air Pollution because the Board may not create an avenue of

appeal to the circuit court broader than that established by the legislature.

A final order sustained the demurrers and dismissed CCA's appeal with prejudice.

## I.

As an initial matter, this Court must decide whether CCA has standing to appeal on behalf of its members, who CCA claims own real property in the vicinity of the proposed rendering plant. In *Cupp v. Board of Supervisors*, 227 Va. 580, 589, 318 S.E.2d 407, 411 (1984), the Supreme Court of Virginia noted that "[t]he point of standing is to ensure that the person who asserts a position has a substantial legal right to do so and that his rights will be affected by the disposition of the case." Because members of CCA are owners of real property in the vicinity of the proposed facility, and because they assert that odors from the plant will directly and adversely affect the value of that property, these individual members would be entitled to bring suit on their own behalf.

> The essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have "alleged such *a personal stake in the outcome of the controversy* as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions."

*Id.* (quoting *Duke Power Co. v. Carolina Envtl. Study Group*, 438 U.S. 59, 72 (1978))(quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)) (emphasis added in *Cupp*). Real property owners who allege that their property will suffer a decline in value as a result of the proposed action have "a sufficient interest in the subject matter of the case so that the parties will be actual adversaries and the issues will be fully and faithfully developed." *See id.*

In *Virginia Beach Beautification Comm'n v. Board of Zoning Appeals*, 231 Va. 415, 344 S.E.2d 899 (1986), the Supreme Court of Virginia held that the plaintiff, a nonprofit corporation representing "the citizens of Virginia Beach in beautification matters," did not have standing to challenge issuance by the Board of Zoning Appeals of a height and setback variance to permit construc-

tion of a billboard. The court held that, in order to be "aggrieved," the dispositive issue in the case, the plaintiff must have experienced "a substantial grievance," "a denial of some personal or property right," "or imposition of a burden or obligation upon the petitioner different from that suffered by the public generally." *Id.* at 419-20, 344 S.E.2d at 903. As real property owners faced with the prospect of a decline in property value as a direct result of the operation of the proposed rendering plant, members of CCA would have standing to sue in their own right.

█ As an association organized to protect the interests of individuals who would be entitled to bring suit in their own right, CCA may bring suit in its representative capacity. "[I]t is well settled that 'in order to entitle any person to maintain an action in court it must be shown that he has a justiciable interest in the subject matter in litigation; either in his own right *or in a representative capacity.*'" *Lynchburg Traffic Bureau v. Norfolk & W. Ry. Co.*, 207 Va. 107, 108, 147 S.E.2d 744, 745 (1966) (quoting C.J.S., *Parties* § 6, at 899) (emphasis added). The facts in this case are to be distinguished from those in *Virginia Beach Beautification Comm'n.* In that case, the plaintiff association was merely "a nonstock corporation with no specific property interests to be damaged." 231 Va. at 420, 344 S.E.2d at 903. As an association, CCA also has no property interests that operation of the proposed rendering plant would undermine. However, CCA specifically alleges direct injury to its members or, in other words, an "imposition of a burden or obligation . . . different from that suffered by the public generally." *Virginia Beach Beautification Comm'n*, 231 Va. at 419-20, 344 S.E.2d at 903.

## II.

### A.

█ CCA asserts that it has standing to appeal the decision of the Board to deny its petition for a formal hearing under § 120-02-09 of the Regulations for the Control and Abatement of Air Pollution, Code § 10.1-1318 (Air Pollution Control Law), and Code § 9-6.14:16 (the Administrative Process Act). In *Environmental Defense Fund v. Virginia State Water Control Board*, 12 Va. App. 456, 404 S.E.2d 728 (1991), a panel of this Court held that, where there is a specific provision for standing in the basic

law,[1] such provision is controlling over the standardized court review in Code § 9-6.14:16.[2] *Id.* at 462, 404 S.E.2d at 732. Panels of this Court are bound by the rule of stare decisis. *See Town of Fries v. State Water Control Board*, 13 Va. App. 213, 409 S.E.2d 634 (1991). Thus, specific standing provisions in the basic law control determination of this appeal.[3]

## B.

■ The basic law in this case, the State Air Pollution Control Law, Code §§ 10.1-1300 *et seq.*, contains a specific provision with respect to standing to appeal and, thus, precludes recourse through the Administrative Process Act. Code § 10.1-1318 states that "[a]ny owner aggrieved by a final decision of the Board under § 10.1-1309 or subsection D of § 10.1-1307 is entitled to judicial review thereof in accordance with the provisions of the Administrative Process Act (§ 9-6.14:1 et seq.)." Only if CCA is an "owner aggrieved by a final decision of the Board" under either of these named sections does it have standing to appeal. Code § 10.1-1307(D) empowers the Board to hear complaints and to hold hearings on the subject of air pollution pursuant to regulations it has adopted under Code § 10.1-1308 to abate, control, or prohibit air pollution in Virginia. A final decision on the part of the Board to deny a formal petition for a hearing would, under Code § 10.1-1318, entitle any "owner aggrieved" by that decision a right to judicial review.

In this case, under regulations promulgated by the Board, Rockingham was required to obtain a modification of its existing air permit in order to construct and operate the proposed facility. Following a public hearing, CCA filed a petition with the Board

---

[1] Code § 9-6.14:4(C) provides:
*"Basic law"* or *"basic laws"* means provisions of the Constitution and statutes of the Commonwealth of Virginia authorizing an agency to make regulations or decide cases or containing procedural requirements therefor.

[2] Code § 9-6.14:16(A) provides in pertinent part:
"Any person affected by and claiming the unlawfulness of any regulation, or party aggrieved by and claiming unlawfulness of a case decision . . . shall have a right to direct review thereof by an appropriate and timely court action against the agency as such or its officers or agents in the manner provided by the rules of the Supreme Court of Virginia."

[3] Appellant asserts that the issue before this Court is whether CCA had standing to appeal the Board's decision to deny the petition for a formal hearing. The trial court based its determination that CCA was without standing to appeal on the Board's decision to issue the permit. Code § 10.1-1318 governs either basis for appeal.

for a formal hearing. Apparently pursuant to the authority vested in it under Code § 10.1-1307(D), the Board denied CCA's petition. If CCA is an "owner aggrieved" under Code § 10.1-1318, then it has standing to appeal this final determination.

Appellees argue that this Court's recent decision in *Environmental Defense Fund v. Virginia State Water Control Board* ("EDF") provides helpful guidance in the resolution of this question. In *EDF*, this Court upheld a circuit court's interpretation of the term "owner" in the State Water Control Law to mean "any entity subject to the State Water Control Board's power and jurisdiction; *i.e.*, any entity which owns or operates an actual or potential discharge source or a permit issued by the Board." 12 Va. App. at 463, 404 S.E.2d at 732. This Court noted as evidence of the correctness of the circuit court's holding a 1990 amendment to the definition of "owner." *Id.* That amendment expressly limited the term "owner" to mean one who "owns, operates, charters, rents, or otherwise exercises control over or is responsible for any actual or potential discharge of sewage, industrial wastes, or other wastes to state waters." Code § 62.1-44.3(5). In other words, this Court held that, even *prior* to the amendment, the definition of "owner" was properly limited to entities who own or operate an actual or potential discharge source.

However, the definition of "owner" in the State Water Control Law at the time of the circuit court's ruling in *EDF* is not the same as the definition of "owner" in the Air Pollution Control Law.[4] The State Air Pollution Control Law defines "owner" as having "*no connotation other than that customarily assigned to the term 'person,'* but shall include bodies politic and corporate, associations, partnerships, personal representatives, trustees and committees, as well as individuals." Code § 10.1-1300 (emphasis added). The State Air Pollution Control Law equates the terms "persons" and "owner." As a result, the ruling in *EDF* does not directly resolve the issue of the definition of "owner" now before

---

[4] At the time of the circuit court's decision in *EDF*, the State Water Control Law's definition of "owner" provided:

"Owner" means the Commonwealth or any of its political subdivisions, including, but not limited to, sanitation district commissions and authorities, and public or private institution, corporation, association, firm or company organized or existing under the laws of this or any other state or country, or any person or groups of persons acting individually or as a group.

this Court.

Appellant suggests that, in light of the broad definition of "owner" provided in the State Air Pollution Control Law, one need only substitute the word "person" for the word "owner" any time the word "owner" appears in the Act. This interpretation of the statute is not warranted. Had the legislature intended that result, it would not have used the word "owner."

We, like the trial court, are "not so much concerned with who may be an owner, as [we are] with what must be owned." Appellant alleges that it represents owners of real property in the vicinity of the proposed plant. However, the provision allowing "owners aggrieved" a right of appeal at no point limits the right of appeal to owners of real property. Nonetheless, unless as the trial court has suggested, the term is limited in some fashion, Code § 10.1-1318 stands as an open invitation to the world to file an appeal. Granted, the term "aggrieved" serves as some qualification to this open invitation, and under Virginia law there are real and substantial requirements of parties claiming to be "aggrieved." *See Virginia Ass'n of Ins. Agents v. Commonwealth*, 201 Va. 249, 253, 110 S.E.2d 223, 226 (1959) (requiring "a substantial grievance, a denial of some personal or property right, legal or equitable, or the imposition upon a party of a burden or obligation"). Even so, with respect to the term "owner" and appellant's contention that this term is to be interpreted interchangeably with "person," this Court will not simply assume the General Assembly intended that result.

Where the term "owner" appears elsewhere in the State Air Pollution Control Law, the context clearly indicates that the word is meant to indicate the owner of a source or a potential source of air pollution. Code § 10.1-1309(A) provides:

The Board shall have the power to issue special orders to:

(i) owners who are permitting or causing air pollution as defined by § 10.1-1300, to cease and desist from such pollution;

(ii) owners who have failed to construct facilities in accordance with or have failed to comply with plans for the control of air pollution submitted by them to and approved by

the Board, to construct such facilities in accordance with or otherwise comply with, such approved plans;

(iii) owners who have violated or failed to comply with the terms and provisions of any Board order or directive to comply with such terms and provisions;

(iv) owners who have contravened duly adopted and promulgated air quality standards and policies, to cease such contravention and to comply with air quality standards and policies; and

(v) require any owner to comply with the provisions of this chapter and any Board decision.

Code § 10.1-1311(B) provides:

Upon a determination of the amount by the Board, the Board shall petition the circuit court of the county or city wherein the owner subject to such noncompliance assessment resides, regularly or systematically conducts affairs or business activities, or where such owner's property affected by the administrative action is located for an order requiring payment of a noncompliance penalty in a sum the court deems appropriate.

Code § 10.1-1314 states in pertinent part:

Every owner which the Board has reason to believe is causing, or may be about to cause, an air pollution problem shall on request of the Board furnish such plans, specifications and information as may be required by the Board in the discharge of its duties under this chapter. Any information, except emission data, as to secret processes, formulae or methods of manufacture or production shall not be disclosed in public hearing and shall be kept confidential.

Finally, Code § 10.1-1316(A) states:

Any owner violating or failing, neglecting or refusing to obey any Board regulation or order may be compelled to comply by injunction, mandamus or other appropriate remedy.

Where the term "owner" appears elsewhere in the statute, it refers to the owner of a source or a potential source of air pollution. This Court finds no reason for holding that, without any explanation at all, the legislature intended "owner" in Code § 10.1-1319 also to include owners of real property who live in the vicinity of the source of the pollution.

As to the apparently broad equation of "owner" with "person" found in Code § 10.1-1300, we find that this definition is not as broad as it appears at first blush. The other uses of "owner" just quoted leave no room for creative interpretation: "owner" means owner of a source or a potential source of air pollution. Thus, the broad definition of "owner" in Code § 10.1-1300 includes an owner of a source or potential source of air pollution whether that owner is a natural person, a corporate entity, an association, a personal representative, a trustee or a committee.

## C.

A final assertion by CCA is that it has standing to appeal as an "other person aggrieved" under § 120-02-09 of the Regulations for the Control and Abatement of Air Pollution.[5] A state cannot be sued except with its permission. See *Elizabeth River Tunnel Dist. v. Beecher*, 202 Va. 452, 456-57, 117 S.E.2d 685, 689 (1961); *Davis v. Marr*, 200 Va. 479, 485, 106 S.E.2d 722, 727 (1959). As an action against the state, this suit is barred by sovereign immunity unless it is provided for by statute. See *Taylor v. Williams*, 78 Va. 422 (1884). The relevant statute in this case is Code § 10.1-1318, which expressly limits the right of appeal to an "owner aggrieved." We uphold the trial court's ruling that an agency cannot create an avenue to judicial review broader than that provided for by the agency's creator, the legislature.

For the foregoing reasons, the decision of the trial court is affirmed.

*Affirmed.*

Baker, J., and Duff, J., concurred.

---

[5] Section 120-02-09(D) of the Regulations states:

Any owner or other person aggrieved by a final decision of the board may appeal such decision in accordance with § 10.1-1318 of the Virginia Air Pollution Control Law and § 9-6.14:16 of the Administrative Process Act.