## CIRCUIT COURT OF THE CITY OF RICHMOND

First Hospital Corp.
of Norfolk, etc.

v.

Robert B. Stroube et al.

December 8, 1993

Case No. HD-1045–4

BY JUDGE RANDALL G. JOHNSON

This is an action by First Hospital Corporation of Norfolk, d/b/a Norfolk Psychiatric Center, seeking declaratory and injunctive relief. Defendants are Robert B. Stroube, the duly appointed State Health Commissioner, and Norfolk Community Hospital Association, Incorporated (NCH). Plaintiff alleges that the Commissioner acted improperly in issuing a Certificate of Public Need (COPN) allowing NCH to establish an acute care psychiatric unit in Norfolk. Plaintiff seeks an order declaring that the Commissioner's issuance of the COPN was improper and enjoining defendants from taking any further action to establish or operate the facility authorized by such issuance.

Each defendant has filed a demurrer, and the Commissioner has filed a plea of sovereign immunity. Basically, it is defendants' position that Virginia's Administrative Process Act (APA) provides the sole remedy for plaintiff's complaints and that, because this action is not filed under the Act, it must be dismissed. Plaintiff, on the other hand, argues that the APA is inapplicable to the facts of this case and that this chancery action is its only means of obtaining relief. Because the court agrees with the position taken by defendants, the demurrers and plea will be sustained, and the action will be dismissed.

The procedural and factual history of the case is not very much in dispute. Under § 32.1–102.3, no person may commence a health care facility project without first obtaining from the Commissioner a COPN. Pursuant to Va. Code § 32.1–102.2, the State Board of Health

has promulgated the Virginia Medical Care Facilities Certificate of Public Need Rules and Regulations, which establish the procedures for the review of COPN applications, and the issuance or denial of COPNs. Part V of the Regulations establishes the COPN review process and provides for the review of COPN applications by the Department of Health and by the regional health planning agency for the geographic area to be served by the COPN applicant. Section 5.4 of the Regulations expressly provides that the Department shall review COPN applications for psychiatric hospitals in two 120-day review cycles, beginning on April 10 and October 10 of each year. In order to be considered during a cycle, a COPN application must be completed by the cycle's beginning date; that is, April 10 or October 10. Section 5.6 of the Regulations provides, however, that the Commissioner may waive the normal review schedule, but only at the request of a COPN applicant, and only in the case of a documented emergency.

On or about October 27, 1992, the Medical College of Hampton Roads (MCHR) requested the Commissioner to waive the normal review schedule pursuant to § 5.6, and to grant to MCHR a COPN to reopen its acute care psychiatric unit. MCHR based its request for waiver of the normal review cycle on the allegation that patient overcrowding at Eastern State Mental Hospital constituted an emergency. By letter dated November 20, 1992, the Commissioner, finding that no emergency as alleged by MCHR existed, denied MCHR's request for a waiver of the normal review cycle. In that same letter, however, the Commissioner established a special psychiatric facilities review cycle to begin January 10, 1993, which would be open to all COPN applicants in the subject health planning region, provided that all applications for the special cycle were filed on or before December 21, 1992.

On or about January 5, 1993, after the December 21, 1992, deadline for applications established by the Commissioner for the special review cycle had passed, defendant NCH submitted an application to convert twenty of its general hospital beds to psychiatric beds, thereby proposing to establish an acute care psychiatric unit at NCH. No other COPN applications were submitted during the special review cycle. On or about April 7, 1993, the Eastern Virginia Health Systems Agency, the regional health planning agency for the relevant geographic area, submitted its report on NCH's application, recommending approval of the application to the Department of Health. On or about April 23,

1993, the Department of Health staff issued its report, recommending approval of NCH's application to the Commissioner.

On May 19, 1993, plaintiff submitted to the Commissioner written comments on NCH's application as permitted by § 5.8 of the COPN Regulations. In its comments, plaintiff objected to what it alleged was the Commissioner's unauthorized establishment of the special review cycle under which NCH's COPN application was considered.

On May 28, 1993, and notwithstanding plaintiff's objections, the Commissioner granted to NCH a COPN for the proposed twenty-bed psychiatric unit. Claiming immediate and irreparable harm from the competition it alleges was improperly allowed by the issuance of the COPN, plaintiff filed this action for declaratory and injunctive relief.

The Administrative Process Act, Va. Code § 9–6.14:1 *et seq.*, provides for judicial review of certain agency actions. In fact, for those matters covered by it, the APA provides the exclusive judicial remedy:

> Thus, the General Assembly has waived sovereign immunity only to allow a party to obtain judicial review of the [agency's] adoption of rules or the [agency's] case decisions, as such are defined in the VAPA, *in the manner provided in the VAPA*. In short, the [agency] has consented to and may be sued only for its promulgation of a rule or its decision of a case, as both are defined in the VAPA. The [plaintiff's] right to bring a declaratory judgment action and in turn the court's jurisdiction to exercise jurisdiction over the action must be founded on the provisions of Code § 9–6.14:16(A) and fall within the explicit and limited waiver of sovereign immunity contained in that Code section.

*Virginia Bd. of Medicine v. VPTA*, 12 Va. App. 458, 466, 413 S.E.2d 59 (1991), *aff'd*, 245 Va. 125, 427 S.E.2d 183 (1993) (emphasis in original).

It is plaintiff's position that the matter about which it complains — the establishment of the special review cycle — is outside the scope of the APA and, thus, not affected by it. The court disagrees.

Section 9–6.14:16(A) of the Code of Virginia provides, in pertinent part, as follows:

> § 9–6.14:16. *Right, forms, venue.* — A. Any person affected by and claiming the unlawfulness of any regulation, or party aggrieved by and claiming unlawfulness of a case decision, as

the same are defined in § 9–14:4 of this chapter . . . shall have a right to the direct review thereof by appropriate and timely court action against the agency as such or its officers or agents in the manner provided by the rules of the Supreme Court of Virginia.

Section 9–6.14:4(D) defines "case" or "case decision" as:

> [A]ny agency *proceeding* or determination that, under laws or regulations at the time, a named party as a matter of past or present fact, or of threatened or contemplated private action, either is, is not, or may or may not be (i) in violation of such law or regulation or (ii) in compliance with any existing requirement for obtaining or retaining a license or other right or benefit.

Emphasis added.

Here, the Commissioner's establishment of a special review cycle was only a part of a larger agency *proceeding*; to wit, the issuance of a COPN to NCH. Indeed, it is inconceivable that plaintiff or anyone else would now be challenging the establishment of the special review cycle if that cycle had not resulted in the issuance of any COPNs, and plaintiff's present insistence that it is the review cycle which is at the heart of its complaint is nothing more than a poorly disguised attempt to evade the exclusiveness of the APA.

In the court's view, Va. Code § 9–6.14:4(D) sets out two separate things which are cases or case decisions. First, "any agency proceeding." Second, any agency "determination." It is only a "determination" which must meet the requirements contained in the remainder of that definitional sentence; that is, that "under laws or regulations at that time, a named party as a matter of past or present fact . . ." etc. A "proceeding" need only be a *proceeding*, and the Commissioner's issuance of a COPN to NCH here, including the establishment of a special review cycle, was a proceeding.

Moreover, even if the court were to accept plaintiff's argument that the qualifying language in § 9–6.14:4(D) following the word "determination" also applies to "proceeding," plaintiff's argument must still fail. This is so because, once again, it is not the establishment of the special review cycle about which plaintiff complains, other than ostensibly, but the issuance of the COPN. Thus, the Commissioner *did* make a "determination that, under laws or regulations at the time, a named

party [NCH] as a matter of . . . present fact . . . is . . . in compliance with an[] existing requirement for obtaining . . . a license or other right or benefit." Plaintiff's arguments to the contrary are without merit.

Similarly, the court rejects plaintiff's argument that the APA does not apply because it, the plaintiff, lacked standing to challenge the Commissioner's actions during the agency's proceedings. As noted above, Va. Code § 9–6.14:16(A) allows certain "persons" and "parties aggrieved" to appeal agency actions. Section 32.1–102.6(D), which deals with the administrative procedures involved in the issuance of COPNs, provides:

> D. A determination whether a public need exists for a project shall be made by the Commissioner within 120 days of the receipt of a completed application. Such determination shall be made in accordance with the provisions of the Administrative Process Act (§ 9–6.14:1 et seq.) except that the parties to the case shall include only the applicant, *any person showing good cause*, any third-party payor providing health care insurance or prepaid coverage to five percent or more of the patients in the applicant's service area, or the health systems agency if its recommendation was to deny the application. For purposes of this subsection, "good cause" shall mean that (i) there is significant relevant information not previously presented at and not available at the time of the public hearing, (ii) there have been significant changes in factors or circumstances relating to the application subsequent to the public hearing, or (iii) *there is a substantial material mistake of fact or law in the Department staff's report on the application or in the report submitted by the health systems agency.*

Emphasis added.

Here, it is plaintiff's position that the Commissioner exceeded his legal authority in issuing a COPN to NCH. In other words, plaintiff claims that such issuance was contrary to law. This being the case, plaintiff must also necessarily take the position that the report of the Department staff and the report of the health systems agency each contained a substantial material mistake of fact or law since each report recommended approval of NCH's application and since, according to plaintiff, such approval was contrary to law. Indeed, by letters dated May 7 and 10, 1993, which were prior to the issuance of the

COPN, plaintiff's Administrator/CEO notified the Department that it challenged NCH's application, and cited alleged shortcomings in the staff report as specific mistakes of law constituting "good cause" to approve the project. Plaintiff also requested permission to appear at an informal fact-finding conference to further present its opposition. By letter dated May 11, 1993, the Department, while denying that any material mistake of law existed, granted plaintiff's request for a fact-finding conference. Plaintiff then informed the Department, by letter dated May 13, 1993, that it would not appear at the conference, but would submit written comments instead. Those comments were made in plaintiff's May 19, 1993, letter previously referred to, and specifically alleged that the Commissioner was without authority to establish the special review cycle.

In light of the above, it is obvious that plaintiff was a party, as that term is defined in Va. Code § 32.1–102.6(D), to the Department's administrative proceedings. Plaintiff alleged good cause, plaintiff was given an opportunity to be heard, and plaintiff is aggrieved by the Department's action. Plaintiff may not now avoid the provisions of the APA by saying that it challenged something else or by ignoring the plain language of the relevant statutes. Because the court finds that the APA does apply, and because this action was not filed in accordance with the provisions of that Act, defendants' demurrers and the Commissioner's plea of sovereign immunity will be sustained.

(The court notes that plaintiff has filed an APA review action in the Circuit Court of the City of Norfolk. This court's opinion in the case at bar obviously has no effect on that proceeding.

The court also recognizes that some of the letters referred to in this opinion, particularly plaintiff's letters of May 7, 10 and 13, 1993, and the Department's letter of May 11, 1993, all referred to in the text, were not attached or referred to in the complaint for declaratory and injunctive relief, and cannot be the basis for demurrer. In fact, the court mentions those letters only to show that plaintiff itself recognizes, or at least recognized while the administrative proceedings were in progress, that it did have standing to challenge the Commissioner's actions, and that § 32.1–102.6(D), which specifically makes COPN requests subject to the APA, applies. The court's decision on the demurrers and plea, even without reference to those letters, is the same, since the applicability of the APA is in no way dependent upon a party's acknowledgement of such applicability.)