COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Willis and Annunziata
Argued at Richmond, Virginia


ROBIN J. PEARSALL
AND
MONUMENT AVENUE PARK ASSOCIATION
                                         OPINION BY
v.        Record No. 0696-97-2    JUDGE JERE M. H. WILLIS, JR.
                                       JANUARY 20, 1998
THE VIRGINIA RACING COMMISSION,
COLONIAL DOWNS, L.P.
AND
STANSLEY RACING CORPORATION


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                         T. J. Markow, Judge

            Patrick M. McSweeney (John L. Marshall, Jr.;
            McSweeney, Burtch & Crump, P.C., on briefs),
            for appellants.

            Teresa C. Manning, Assistant Attorney General
            (Richard Cullen, Attorney General; Michael K.
            Jackson, Senior Assistant Attorney General;
            Donald R. Ferguson, Assistant Attorney
            General, on brief), for appellee Virginia
            Racing Commission.

            John C. Ivins, Jr. (James L. Weinberg;
            Chandra D. Lantz; Hirschler, Fleisher,
            Weinberg, Cox & Allen, P.C., on brief), for
            appellees Colonial Downs, L.P. and Stansley
            Racing Corporation.


     Robin J. Pearsall and the Monument Avenue Park Association

(Association) contend that the trial court erred in ruling that

the Association was not a "person aggrieved," see

Code § 59.1-373, and that, for that reason, the Association

lacked standing to appeal from a decision of the Virginia Racing

Commission, an administrative agency.[1]  We disagree.

_____
     [1]The appellants do not contend that the trial court erred in

The Virginia Racing Commission (Commission) regulates horse racing and pari-mutuel betting in the Commonwealth, including the issuance of licenses to persons or entities desiring to operate race tracks and betting facilities. Code §§ 59.1-364 et seq. On October 12, 1994, the Commission licensed Colonial Downs, L.P. (Colonial Downs) and Stansley Racing Corporation (Stansley) to own and operate a horse race track. On December 20, 1995, the Commission issued Colonial Downs and Stansley a license to operate a betting parlor at 3200 West Broad Street in Richmond.

Colonial Downs and Stansley sought an amendment of the Commission's order to relocate the betting parlor at 4700 West Broad Street, located in Richmond and Henrico County. On June 25, 1996, following public notice and a hearing, the Commission granted that amendment to the betting parlor license.

Pearsall and the Association appealed the Commission's decision to the trial court. The Association is a civic group composed of individuals residing in the City of Richmond and within the vicinity of the betting parlor.

The trial court conducted a hearing on the appeal. Landon Wellford testified that he was a member of the Association and owned a residence located within sight of the betting parlor. He stated that he believed that the licensing of the parlor "would negatively impact the neighborhood and probably hurt property

dismissing Robin J. Pearsall from their petition for review. Accordingly, we confine our review to the trial court's dismissal of the Association.

values as a result of a negative commercial use . . . inappropriately mixed in with a residential use."

Robert Goodman, an expert on the effects of the siting and operation of gambling facilities on residential neighborhoods, testified that the presence of the betting parlor would reduce residential property values in the neighborhood. Cecil E. Sears, an expert on residential property values in the City of Richmond, testified that residences located within view of the betting parlor or on streets immediately behind the facility would likely suffer a decline in value.

The trial court dismissed the Association's petition for review. It held that Wellford had standing to bring the appeal, but concluded that his membership in the Association did not confer that standing on the Association. It ruled that neither the Association nor Pearsall was a "person aggrieved." For this reason, the trial court dismissed the appeal.

The sole issue in this appeal is whether the Association had standing to seek review of the Commission's decision on behalf of its members.

> The concept of standing concerns itself with the characteristics of the person or entity who files suit. The point of standing is to ensure that the person who asserts a position has a substantial legal right to do so and that his rights will be affected by the disposition of the case. In asking whether a person has standing, we ask, in essence, whether he has sufficient interest in the subject matter of the case so that the parties will be actual adversaries and the issues will be fully and faithfully developed.

<u>Cupp v. Board of Supervisors</u>, 227 Va. 580, 589, 318 S.E.2d 407, 411 (1984) (citation omitted).

Standing, in this case, is governed by statute. <u>See</u> <u>Environmental Defense Fund v. Virginia State Water Control Bd.</u>, 12 Va. App. 456, 462, 404 S.E.2d 728, 732 (1991). Code § 59.1-373 expressly limits the right to appeal a decision of the Commission.

> Any <u>person aggrieved</u> by a refusal of the Commission to issue any license or permit, the suspension or revocation of a license or permit, the imposition of a fine, or any other action of the Commission, may, within thirty days of such action, appeal to the Circuit Court of the City of Richmond.[2]

<u>Id.</u> (emphasis added). Thus, the determinative inquiry in this appeal is whether the Association is a "person" that was "aggrieved" by an action of the Commission.

Code § 59.1-365 defines a "person" to include "a natural person, partnership, joint venture, association, or corporation." An unincorporated association may sue or be sued. Code § 8.01-15. The Association is an unincorporated civic group comprised of persons in a defined region of the City of Richmond. Accordingly, we conclude that the Association is a "person" for purposes of this appeal.

---

[2]The General Assembly modified Code § 59.1-373, requiring compliance with Article 4 of the Administrative Process Act in the review and appeal of the Commission's decisions. 1996 Va. Acts ch. 573. However, the amendment does not apply to agency actions commenced prior to July 1, 1996. 1996 Va. Acts ch. 573, cl. 2. Accordingly, we refer to the statute in this opinion as it was written prior to the amendment.

However, the ability to initiate an action does not confer upon a party the right to maintain an action involving no direct interest of that party. To have standing, the Association must demonstrate that it is "aggrieved" under Code § 59.1-373.

> The term "aggrieved" has a settled meaning in Virginia when it becomes necessary to determine who is a proper party to seek court relief from an adverse decision. In order for a petitioner to be "aggrieved," it must affirmatively appear that such person had some direct interest in the subject matter of the proceeding that he seeks to attack. The petitioner "must show that he has an immediate, pecuniary and substantial interest in the litigation, and not a remote or indirect interest" . . . . The word "aggrieved" in a statute contemplates a substantial grievance and means a denial of some personal or property right, legal or equitable, or imposition of a burden or obligation upon the petitioner different from that suffered by the public generally.

Virginia Beach Beautification Comm'n v. Board of Zoning Appeals, 231 Va. 415, 419-20, 344 S.E.2d 899, 903 (1986) (citations omitted).

The Association neither owns nor occupies any real property. No personal or property right of the Association was adjudicated by the Commission. The Commission did not order the Association to act or to refrain from acting. Nothing in the record suggests that the Association holds any right that will be affected by the outcome of this case. We agree with the trial court's finding that the Association was not a "person aggrieved" under the statute.

The Association contends that it has representative standing

to assert the rights of its members who have been injured by the Commission's action.  The Association relies upon <u>Citizens for Clean Air v. Commonwealth ex rel. State Air Pollution Control Bd.</u>, 13 Va. App. 430, 412 S.E.2d 715 (1991), in which we stated, <u>obiter</u> <u>dicta</u>:

> As an association organized to protect the interests of individuals who would be entitled to bring suit in their own right, [the association] may bring suit in its representative capacity.

<u>Id.</u> at 435, 412 S.E.2d at 718.  In <u>Citizens for Clean Air</u>, we found support for "associational standing" in <u>Lynchburg Traffic Bureau v. Norfolk & W. Ry. Co.</u>, 207 Va. 107, 108, 147 S.E.2d 744, 745 (1966), which held:

> [I]t is well settled that "in order to entitle any person to maintain an action in court it must be shown that he has a justiciable interest in the subject matter in litigation; either in his own right <u>or in a representative capacity</u>."

<u>Citizens for Clean Air</u>, 13 Va. App. at 435, 412 S.E.2d at 718 (emphasis in original).

In <u>W.S. Carnes, Inc. v. Board of Supervisors</u>, 252 Va. 377, 478 S.E.2d 295 (1996), a home builders association brought a suit for declaratory judgment seeking invalidation of county ordinances that increased building permit fees.  <u>Id.</u> at 379, 478 S.E.2d at 297.  The Supreme Court reaffirmed its holding in <u>Lynchburg Traffic Bureau</u>, stating:

> A plaintiff has standing to institute a declaratory judgment proceeding if it has a "justiciable interest" in the subject matter of the proceeding, either in its own right or

in a representative capacity.

Id. at 383, 478 S.E.2d at 299.  However, the Supreme Court held that the association lacked standing because it had failed to show that its own rights would be affected by the outcome of the proceeding.  The Court noted that the association neither built houses nor paid building permit fees.  Id.  Moreover, the Court said:

> This conclusion is not altered by the fact that the Association purports to act in a "representative capacity" on behalf of its members.  An individual or entity does not acquire standing to sue in a representative capacity by asserting the rights of another, unless authorized by statute to do so.

Id. at 383, 478 S.E.2d at 300.

This passage in Carnes clarified the Supreme Court's recognition of representational standing in Lynchburg Traffic Bureau and tacitly overruled our extension of that standing in Citizens for Clean Air.  Furthermore, the result in Carnes was reached despite the provision that the article governing administration of declaratory judgments is to be liberally interpreted.  See Code §§ 8.01-184, 8.01-191; Fairfax County v. Southland Corp., 224 Va. 514, 297 S.E.2d 718 (1982).

We note that federal courts have permitted organizations to pursue legal action on behalf of their members.[3]  We recognize

---

[3] See, e.g., Warth v. Seldin, 422 U.S. 490, 511 (1975).  In Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333 (1977), the United States Supreme Court:  "recognized that an association has standing to bring suit on behalf of its members when:  (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are

that granting such standing may provide significant benefits in judicial economy and for interested parties.  See 14A Michie's Jurisprudence Parties § 11 (1989).  However, Virginia holds that an association is not the alter ego of its individual members. The mere fact that its members have an interest in litigation does not, per se, vest the association with a justiciable interest in the litigation.

Virginia recognizes representational standing only when it is specifically authorized by the legislature.  See Carnes, 252 Va. at 383, 478 S.E.2d at 300.  Code § 59.1-373 contains no such authorization.  Furthermore, this suit, brought against a state agency, is a suit against the Commonwealth and requires strict adherence to the statutes waiving sovereign immunity.  See Halberstam v. Commonwealth, 251 Va. 248, 250-51, 467 S.E.2d 783, 784 (1996); Virginia Bd. of Medicine v. Virginia Physical Therapy Ass'n, 13 Va. App. 458, 464-65, 413 S.E.2d 59, 63 (1991), aff'd, 245 Va. 125, 427 S.E.2d 183 (1993).  We must construe the Commonwealth's waiver of its sovereign immunity narrowly.  See Virginia Bd. of Medicine, 13 Va. App. at 464-65, 413 S.E.2d at 63.  Thus, the trial court correctly held that the Association lacked standing to maintain this suit.

Accordingly, we affirm the trial court's dismissal of the appellants' petition for review.

germane to the organization's purpose; and (c) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit."  Id. at 343.

<u>Affirmed.</u>