COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Huff and Senior Judge Clements

DAVID ANTHONY BROWN

v.      Record No. 0843-11-2

CHARLOTTESVILLE DEPARTMENT
  OF SOCIAL SERVICES

MEMORANDUM OPINION[*]
PER CURIAM
AUGUST 23, 2011

FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
Edward L. Hogshire, Judge

(William M. Marshall; Marshall & Marshall, P.C., on brief), for
appellant. Appellant submitting on brief.

(Allyson Manson-Davies, Deputy City Attorney; Samantha Freed,
Guardian *ad litem* for the minor child; Snook & Haughey, P.C., on
brief), for appellee. Appellee and Guardian *ad litem* submitting on
brief.

On March 30, 2011, the trial court terminated the residual parental rights of David Anthony

Brown to his son, J.J., pursuant to Code § 16.1-283(B) and 16.1-283(C). On appeal of this decision,

Brown contends the trial court erred in terminating his parental rights when the result of a paternity

test was not submitted to the court. Moreover, Brown challenges the sufficiency of the evidence to

support the termination. Finding no error, we affirm the trial court's decision.

Background

On appeal, we view the evidence in the "'light most favorable' to the prevailing party in

the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible

therefrom.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767

(2005) (quoting Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

460, 463 (1991)).  When reviewing a decision to terminate parental rights, we presume the circuit court "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'"  Id. at 265-66, 616 S.E.2d at 769 (quoting Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)).  "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'"  Id. at 266, 616 S.E.2d at 769 (quoting Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citation omitted)).  "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'"  Id. (quoting Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990)).

J.J. was born to Renee Jones (the mother) on February 1, 2005.  The Charlottesville Department of Social Services (CDSS) took custody of J.J. and placed him in foster care on February 24, 2009.  At the time, J.J. was living with his mother under unsafe conditions.  CDSS also had concerns about substance abuse on the part of the mother.  When he entered foster care, J.J. was developmentally delayed in several areas.

Initially, no father was identified for J.J. in the legal proceedings related to his placement in foster care.  However, Brown was named as the father in March 2009, and a paternity test was ordered for him.  Brown then was incarcerated at the Powhatan Correctional Facility with projected release in 2010.  The foster care service plan required that if Brown was released early and paternity was established, he was to provide a safe home environment for J.J. and maintain employment.  Brown also was to maintain consistent contact with CDSS to plan for J.J.'s future.  Brown subsequently was transferred to Red Onion State Prison and was to remain incarcerated until 2011.

Beginning in May 2009, CDSS sent Brown letters asking about potential relative placements for J.J. Brown responded with the name of Domeeka Jones, who was Brown's fiancée. CDSS provided Jones paperwork required to pursue the placement, but she did not return it. Brown named no other relatives with whom J.J. could be placed, and did not respond to letters from CDSS.

At the termination hearing in juvenile and domestic relations district court on June 14, 2010, Brown's mother, Tanya Raglan, expressed an interest in caring for J.J. However, she did not follow up with CDSS and did not respond to CDSS's written inquiries.

At the time of the termination hearing in the trial court on October 15, 2010, J.J. had adjusted well to his foster care placement. He had made progress with his developmental delays, and was entering kindergarten. J.J.'s foster mother had developed a strong bond with him and indicated interest in adopting him.

Brown testified he had not seen J.J. since he was incarcerated in October 2008. Brown did not deny that he was J.J.'s father. Brown claimed that before he went to jail he cared for J.J. for periods of time when the mother was absent.

Raglan testified that she had served as a foster parent before in the state of New York, and she wanted to obtain custody of J.J. Brown acknowledged to her that J.J. was his son. Raglan had not seen J.J. since he was eight months old.

The trial court terminated appellant's parental rights, affirmed the foster care plan with a goal of adoption, and denied Raglan's request to be considered as a potential placement for J.J.

Discussion

I.

Brown argues the trial court erred in terminating his parental rights in the absence of test results establishing his paternity. In his brief, Brown provides no citation to legal authority to

support a contention that a paternity test was a prerequisite to termination of his parental rights, and we are aware of none. Rule 5A:20(e) mandates that an appellant's brief include "principles of law and authorities" with respect to each assignment of error. Appellant has the burden of showing that reversible error was committed. See Lutes v. Alexander, 14 Va. App. 1075, 1077, 421 S.E.2d 857, 859 (1992). Mere unsupported assertions of error "do not merit appellate consideration." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992). Accordingly, we do not consider this claim on appeal.

Moreover, contrary to Brown's contention, the identity of J.J.'s father was not at issue in the proceedings. One month after J.J. entered foster care, Brown was named as the father. CDSS communicated in writing with Brown as J.J.'s father, and he provided Jones' name as a potential relative placement. Brown acknowledged in court and to Raglan that J.J. was his son.

II.

Appellant argues the evidence was insufficient to support the termination of his parental rights. Pursuant to Code § 16.1-283(C)(1), a parent's residual parental rights "of a child placed in foster care . . . may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child" and that

> [t]he parent . . . ha[s], without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent . . . and to strengthen the parent-child relationship. Proof that the parent . . . ha[s] failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition[.]

J.J. was removed from the mother's home because of dangerous living conditions. Brown was then incarcerated, and remained in prison through the termination proceedings. At the time of the termination hearing in the trial court, J.J. was five years old and had been in foster

- 4 -

care for twenty months. Brown had not seen J.J. for two years. Despite the efforts of CDSS to involve Brown from prison, he did not communicate with CDSS regarding J.J. or help to plan for the child's future, other than provide Jones' name as a potential relative placement. There was no indication Brown had any type of bond with the child. On the other hand, J.J. had bonded with his foster mother, who was interested in adopting him, and he was thriving in his foster home.

In determining what is in the best interests of a child, this Court has stated:

> a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

Clear and convincing evidence proved that termination of Brown's parental rights was in J.J.'s best interests. We recognize that "'[t]he termination of [residual] parental rights is a grave, drastic and irreversible action.'" Helen W. v. Fairfax Cnty. Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-29 (1991) (quoting Lowe v. Dep't of Pub. Welfare of Richmond, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986)). However, "[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).[1]

---

[1] Brown maintains that terminating his parental rights absent a paternity test does not promote stability and permanency in J.J.'s life because such a test could establish he is not J.J.'s father. However, Brown would have no standing to challenge the trial court's ruling on behalf of an alleged father whose identity is not known. See generally Pearsall v. Virginia Racing Comm'n, 26 Va. App. 376, 379, 494 S.E.2d 881, 879 (1998).

We find the evidence sufficient to support the trial court's decision to terminate Brown's parental rights to J.J. pursuant to Code § 16.1-283(C)(1).  Therefore, we need not consider any challenge to the sufficiency of the evidence for a termination under Code § 16.1-283(B) and § 16.1-283(C)(2).  See Fields, 46 Va. App. at 8, 614 S.E.2d at 659.

## Conclusion

For the foregoing reasons, we affirm the termination of Brown's parental rights.

Affirmed.