Shaw, C. J.
The appellant has been duly appointed and qualified as the administrator de bonis non, with the will annexed, of the estate of William Thurston, formerly of Boston, deceased. Thurston died in 1822, having made a will, and appointed his wife, Elizabeth Thurston, sole executrix. This will was duly proved and allowed, and Mrs. Thurston assumed the duties of the trust to which she was appointed. In November 1830, she intermarried with the appellee, Samuel Swett of Dedham. It appears by the probate records, that previously to her marriage, she settled four accounts, as executrix, to wit, in 1824, in 1827, 1828 and 1829; that after said marriage, the said Samuel and Elizabeth settled three accounts, to wit, in 1831, in 1834, and in 1839 ; and that after the decease of said Elizabeth, the said Swett, as the husband of said Elizabeth, and surviving her, settled an account, in September 1840, the allowance of which, by a decree of the probate court, is the subject of this appeal.
By the established rule of the common law, if a feme sole were appointed an executrix, and accepted that trust, and she afterwards married, her husband became joint executor with her during the coverture; or perhaps, speaking more accurately, he became executor in her right. Bac. Ab. Executors and Administrators, A. 8. But as the interest is vested in the husband in her right, if she die, it shall not survive to the husband. Toller on Executors, (4th ed.) 242. Now, by the Rev. Sts. c. 63, <§> 9, this is wholly changed, and if an unmarried woman be executrix, either alone or jointly with another person, and she marry, her husband shall not be executor in her right, but the marriage shall operate as an extinguishment of her authority.
But before the revised statutes went into operation, (May 1836,) a different rule prevailed, as established by St. 1783, c. 24, >§>19. This provided, that if a feme sole were executrix *197 jointly with another, her marriage should extinguish her authority ; but did not extend to a case where such feme sole was a sole executrix or administratrix. By the general rule of law, therefore, in 1830, when Mrs. Thurston intermarried with the appellee, he became joint executor with her, in her right; and she being a sole and not a joint executrix, the modification of the general rule, as established by St. 1783, did not reach the case. During the period, therefore, from the time of Mrs. Thurston’s marriage with the appellee, he rightly acted as joint executor with her, in her right; but this authority ceased at her decease, and then, as survivor, he became liable to account.
I. The first exception taken to this appeal is, that Wiggin, the administrator de bonis non on the estate of the testator, is not a party aggrieved, within the meaning of the Rev. Sts. c. 70, <§> 36, and c. 83, § 34, having a right to appeal from the decree allowing the account.
We agree entirely with the proposition of the counsel for the appellee, that it is not every one who is dissatisfied with a decree, that has a right by law to appeal from it. A party aggrieved is one whose pecuniary interest is directly affected by the decree ; one whose right of property may be established oi divested by the decree. Smith v. Bradstreet, 16 Pick. 264. The same principle seems to have been adopted in New Hampshire. Bryant v. Allen, 6 N. Hamp. 116.
It was argued, that at common law there was no privity between an original executor or administrator and an administrator de bonis non, and that it is only by force of a statute provision, (Sts. 1812, c. 105; 1817, c. 190, § 18 ; Rev. Sts. c. 110, <§><§> 9, 10,) that an administrator de bonis non can come in and prosecute a suit commenced by an original executor or administrator. 4 Mass. 611, 613. But we are of opinion that this question does not depend upon this principle. The administrator de bonis non becomes the representative of the estate; the unadministered property vests in him in trust for creditors and legatees. He is the party into whose hands the balance, if any, remaining in the hands of the former administrator, is to go to be administered. This seems to be the clear result of the very *198 numerous provisions in the revised statutes on the subject. One provision seems to be decisive ; which is, that all moneys recovered on an executor’s or administrator’s bond, unless where, in special cases, the money is recovered for the use of a creditor or next of kin, “ shall be paid over to the co-executor or co-administrator, if there be any, or to whoever shall then be the rightful executor or administrator, and shall be assets in his hands, to be administered according to law.” Rev. Sts. c. 70, <§>11. When, therefore, a sole executor dies, and an administrator de bonis non is appointed, the latter is the rightful administrator. The balance in the hands of a former administrator, even when obtained by suit on the bond, is to be paid into the hands of the administrator de bonis non, and shall be assets: A fortiori, when such balance is obtained without suit. Such an administrator has a direct interest in increasing such balance. So if the balance is in favor of the former administrator, and there is real estate, liable to be sold on license, by the administrator de bonis non, to pay such balance, he has a direct interest, as trustee for the legatees, to diminish such balance. In other words, he becomes the sole representative of the estate, the trustee for all persons having an interest in it; and, as such, it is his province and duty to see that the account is settled correctly; he is aggrieved in his property, if there be any failure to account for all that is due to the estate, and therefore may appeal.
II. The next question is, whether, in the settlement of the last account, it was competent for the court, under the circumstances of the case, to reexamine the former accounts rendered by the executrix, and make corrections therein, by charging back sums which were therein credited to her, or in any other way diminishing allowances made to her therein.
By Rev. Sts. c. 67, $ 10, it is expressly provided, that upon every settlement of an account by an executor or administrator, all his former accounts may be so far opened, as to correct any mistake or error therein, excepting that any matter in dispute between two parties, which had been formerly heard and determined by the court, shall not be again brought in question, without leave of the court. The law was substantially the same *199 oefore the revised statutes. In order to avail himself of the benefit of this exception, and show that the question has been once judicially considered and decided, an administrator must take care, that the matter thus adjudicated should be so stated as to appear in the decree of the court allowing and disallowing specific items of the account. Field v. Hitchcock, 14 Pick. 405. Even then, by leave of the court, the account may be opened ; though undoubtedly the court would be cautious in exercising such a power in regard to a subject once controverted and once judicially settled Stetson v. Bass, 9 Pick. 27. Smith v. Dutton, 4 Shepley, 308. In the present case, the estate having been wholly in the hands of the widow and executrix, from the time of the probate of the will to her decease; as she herself was the principal legatee and annuitant; and more especially as it does not appear that any person, interested in the ultimate disposition of the estate, appeared or was represented, at the settlement of any of the prior accounts, the court are of opinion, that upon the present account it was competent for the appellant to show any errors in the settlement of the former accounts by the executrix, in her own favor, by charging back sums, if any, which were illegally or improperly allowed.
But it is urged, that so far as this might be admissible, in regard to the accounts rendered by the appellee, jointly with his wife, yet that it is not competent to extend this rule to the four first accounts which were settled by the executrix, whilst sole; and that the effect might be to charge the appellee with a balance for which he is not responsible after his wife’s decease. 1 P. W. 469. Cas. Temp. Talb. 173.
To this we think there are several answers. In the first place, the .appellee, acting as the representative of the executrix, claims a large balance as due to him; and the allowance of that balance would lay the foundation for a sale of the real estate, under license, to an amount sufficient to satisfy that balance ; and such balance would enure directly to his own benefit. This balance is made up by bringing forward the balance of those former accounts. If, then, those former accounts do, as the argument assumes, contain errors and mistakes, against the *200 estate, and in favor of the executrix, the appellee would have a decree in his own favor, and for his own benefit, for the amount of such erroneous allowances, to the manifest injury of others having a prior interest in the estate.
But further; even if the effect of the proposed corrections would be to change the balance, and raise a balance in favor of the estate, it does not necessarily follow, that the appellee would be personally responsible for that balance. Acting in a representative capacity only, he may be legally bound to settle the account, and settle it correctly, though he may not be personally bound to pay the balance. If the deficiency amounts technically to a devastavit, either during the coverture or before the marriage, he may, as husband, be liable for it, or not. But those interested in the estate may have other objects in the settlement, besides that of charging the husband personally; as, for instance, charging the sureties on the original bond of the executrix. Upon a final settlement, perhaps the decree of the court of probate, if a balance is found in favor of the estate, may distinguish, upon the facts, and according to the legal obligations of the parties, whether for any, and, if so, for what part of such balance, the appellee may be personally liable.
We are therefore of opinion that it is competent for the court, on the settlement of this account, to examine all the prior accounts, as well those settled by the executrix before marriage, as those settled by her and the appellee jointly since.
III. The appellant claims to charge back the sum of $ 1083-33, allowed to the executrix, as a substitute for the rent of $500 given her by the will. The facts relative to this are not very definitely stated ; but as we understand it, this depends on the construction of that part of the will by which the testator gave his widow the use and improvement of his dwelling-house during her life. By the will, he gives her the dwelling-house during her life, but if sold during his life, then the rent of the house in Corn-hill, in lieu of it; and in case of sale of the Cornhill house, then $ 500 a year. As we understand, the $ 500 was given only in case both the dwelling-house and the house in Cornhill should be sold. But the dwelling-house was not sold; it was leased, *201 and she took the rent of it, and therefore the right to the $ 500 never accrued. If such are the facts, we are of opinion that the allowance of the $500 a year was improperly made, and that the account ought to be corrected by charging it back. If the estate has been charged with interest, then interest on this item should be charged. But this will be open to further consideration when a corrected account comes to be stated.
The appellant claims to charge back, also, all sums allowed in the account as paid for premiums of insurance and taxes.
In regard to the sums paid for insurance, we find by the will, that the testator gave to his wife his dwelling-house for her life, and directed that the same be kept in repair out of his other “estate. Under a liberal construction of this devise, we think that if the dwelling-house was damaged by fire, or burnt down, it must have been rebuilt or repaired at the expense of the estate ; and therefore that as executrix, acting for the general interests of all those who would be eventually interested in the preservation of the estate, she had a right to insure this house at the expense of the estate.
Taxes are properly payable out of the rent and income of real estate, and therefore constitute a proper charge upon those who have the actual and beneficial use and enjoyment of the estate for the time being; whether it be in fee, for life, or for years. The taxes, therefore, paid by Mrs. Thurston, on the house devised to her for life, were paid on her own account, and did not constitute a proper charge in her account as executrix.
IV. The most material question, submitted on this appeal, arises upon the apportionment of the annuity. The appellee claims to charge the account with part of an instalment, proportioned to the time which elapsed between the next preceding day of payment and the day of the decease of the annuitant.
The general rule, both of law and equity, is, and is admitted by the appellee’s coup sel to be, that where an annuity is payable on fixed days during life, and the annuitant dies before the day, the personal representative is not entitled to a proportion-able part of the annuity. 1 Roper on Leg. (1st Ámer. ed.) *202 589. The same rule prevails in regard to rents and other payments at particular days. Jenner v. Morgan, 1 P. W. 392 Hay v. Palmer, 2 P. W. 501. Tracy v. Strong, 2 Connect. 659, 664. By the will, the annuity given to the executrix was #800 a year, payable quarterly; which was in effect giving her #200 to be paid once each quarter. As the testator died August 25th 1822, the annuity became payable on the 25th of November, February, May and August. Houghton v. Franklin, 1 Sim. & Stu. 390. As Mrs. Swett died August 22d 1840, that proportion of the annuity which is supposed to have accrued from May 25th to August 22d, and which would have been payable, had she lived till the 25th of August, cannot be allowed. It falls within the general rule already stated, and not within the exceptions to that rule which were made in the cases* cited for the appellee.
The account last allowed by the judge of probate is to be sent to a master in chancery, who will examine the facts, and make report concerning the charge of #1083-33, in the account rendered in 1824.
The master, to whom the account was sent, made a report, from which it appeared that the testator, after the making of his will, leased his dwelling-house for the term of three years, and went to Europe, where he died before the said term expired ; that his executrix received no rent from the lessee prior to October 25th 1824; either because the rent, up to that date, had been paid to the testator in advance, or for. some other un-know reason.
7 he Court thereupon decided that said charge of # 1083-33 lould not be supported, and that it should be charged back in a corrected statement of the final account of the executrix: That if the testator leased his dwelling-house, and received rent therefor, in advance, for a longer time than he lived, he thereby revoked, pro tanto, the devise of the use thereof to the *203 executrix; and that if she failed, for any other reason, to obtain rent from the lessee, the estate of the testator could not be charged with the loss thus sustained by her.

 3 Vin. Ab. Apportionment, F. 3. Howell v. Hanforth, 2 W. Bl. 1016. Reynish v. Martin, 3 Atk. 330. Waring v. Purcell, 1 Hill’s (S. C.) Ch. Rep. 199. Webb v. Lord Shaftesbury, 11 Ves. 361.