110 S.E.2d 223 (1959)
201 Va. 249
VIRGINIA ASSOCIATION OF INSURANCE AGENTS, etc.
v.
COMMONWEALTH of Virginia.
VIRGINIA ASSOCIATION OF INSURANCE AGENTS, etc.
v.
NATIONAL BUREAU OF CASUALTY UNDERWRITERS et al.
Supreme Court of Appeals of Virginia.
September 3, 1959.
*224 William H. King, Richmond, for appellant.
Claude D. Minor, Collins Denny, Jr., Richmond, for the Commonwealth.
No brief filed or argument on behalf of appellees National Bureau of Casualty Underwriters and others.
Before EGGLESTON, C. J., and SPRATLEY, BUCHANAN, MILLER, WHITTLE, SNEAD and I'ANSON, JJ.
SNEAD, Justice.
Virginia Association of Insurance Agents, a corporation, appealed from the entry of two orders by the State Corporation Commission relating to separate applications filed for approval of certain insurance rates. One order approved rates for automobile physical damage insurance under the application filed by Virginia Insurance Rating Bureau (Record No. 4957) and the other approved rates for automobile bodily injury and property damage insurance under the application filed by National Bureau of Casualty Underwriters and Mutual Insurance Rating Bureau. (Record No. 4958). Both appeals involve the same questions for our consideration.
Virginia Insurance Rating Bureau is a statutory organization created for the purpose of "making or adopting rates" for certain kinds of property insurance, including "fire, theft, collision and other physical damage insurance on motor vehicles * * *", subject to the approval of the State Corporation Commission. §§ 38.1-225 and 38.1-226, Code 1950. Every insurer authorized and licensed to transact such kind of insurance business in this state, except those specifically exempted under § 38.1-222, is required to be a member of this Bureau. The Bureau filed on behalf of its members an application with the Commission "for approval of amendments to the manual of classifications, rules and rates, and rating plans and modifications thereof for writing physical damage insurance." After a hearing held April 24, 1958, the Commission by order of June 2, 1958 approved the application as amended by the Virginia Insurance Rating Bureau with certain exceptions. It provided for an increase of 6.12% in the existing rate level. The rate approved was based upon an allowance of 25% for commissions in the rate-making formula.
Shortly after the entry of this order, the Commission was advised that the National Automobile Underwriters Association, a qualified advisory organization of Virginia Insurance Rating Bureau, had on May 21, 1958 while the case was under consideration by the Commission, changed the formula for physical damage insurance by substituting an allowance of 20% for commissions for the 25% allowance the Commission had approved in its order of June 2, 1958. Virginia Insurance Rating Bureau was immediately directed by the Commission to file revised lower rates reflecting this change and accordingly data was submitted in the latter part of July, 1958 resulting in another order of the Commission, dated August 1, 1958, which is the basis for this appeal. It provided for a reduction of 6% of the rates approved by the order entered on June 2, 1958. The revised rates were approved upon the basis of a formula fixing 48.3% of the premium dollar for expenses, which included 20% for commission, and 51.7% for losses. *225 The practical effect of this order was to restore the state-wide rate level which existed prior to the order of June 2, 1958.
The application of National Bureau of Casualty Underwriters and Mutual Insurance Rating Bureau, licensed rating organizations, for approval by the Commission of revised rules and rates for writing automobile bodily injury and property damage liability insurance was filed on behalf of their members pursuant to Chapter 6 of Title 38.1, Code 1950, by the Commission's order of June 11, 1958. Substantial increases in the rates for both types of insurance were proposed in their filings. On July 2, 1958 a hearing was had on this application. By order entered July 11, 1958, an increase of 8.3% in bodily injury liability insurance and a 12.6% increase in automobile property damage insurance or a total for basic limits for the two types of insurance of 10% was authorized over the existing rates. The order included a rate formula for both classifications of insurance. Included in the 35.4% allowed for total service and overhead was 20% for production costs. The balance of 64.6% of the premium dollar was allocated to "Expected Loss and Loss Adjustment Ratio". It was the entry of this order that gave rise to an appeal by Virginia Association of Insurance Agents.
When appeals were taken in both cases the Commonwealth of Virginia, at the relation of the State Corporation Commission, filed motions to dismiss the appeals on the grounds that the Virginia Association of Insurance Agents had no appealable interests. In granting the appeals we ordered that consideration of the motions to dismiss be deferred until the appeals were heard on their merits.
In Record No. 4958 National Bureau of Casualty Underwriters and Mutual Insurance Rating Bureau, appellees, did not file a brief or argue the case before us. In Record No. 4957 Virginia Insurance Rating Bureau, which contends it is the true and proper appellee, filed a brief and the case was argued by its counsel. Where "appellee" is hereinafter used it relates to Virginia Insurance Rating Bureau.
It is properly conceded that the rate of commissions paid by an insurer to its agent is a matter of private contract and that such agreement is not subject to regulation by the Commission. Appellant argues that a reduction from 25% to 20% in commissions recited in the rating formulas influences and "goes far towards regulating" compensation to be paid agents of insurers. Appellee maintains that the formulas in no way forbid the insurer and the agent to make any contract they desire for commissions to be paid, and that the formulas were a yardstick in arriving at rates which allowed a certain percentage of the premium dollar for expenses of doing business and for profit and the remainder for the payment of losses.
Appellant poses the following questions as involved in these appeals: (1) Did the Virginia Association of Insurance Agents have proper standing to appeal from the Commission's orders of July 11, 1958 and August 1, 1958; and (2) Did the Commission err in establishing, without supporting evidence a "total production cost allowance" of 20% in the rating formula recited in the order dated July 11, 1958 and a "commission" allowance of 20% in the rating formula set forth in the order of August 1, 1958?
Virginia Association of Insurance Agents is a non-stock and a non-profit corporation. Its membership consists solely of agents who represent stock insurance companies which issue automobile and other kinds of property and casualty insurance. It maintains that it is a party in interest as well as a party aggrieved by the entry of the orders in question and it therefore has appealable interests. On the contrary appellee contends that appellant has no standing to prosecute these appeals.
*226 Section 38.1-279, Code 1950, provides:
"Appeal from final order or decision of Commission.The provisions of § 12-63 shall apply to appeals to the Supreme Court of Appeals of Virginia from any final order or decision of the Commission with respect to any matter coming within the purview of this chapter."
Section 12-63, Code 1950, reads in part:
"Appeals generally.The commonwealth, any party in interest or any party aggrieved by any final finding, order, or judgment of the Commission shall have, of right, regardless of the amount involved, an appeal to the Supreme Court of Appeals, which shall be taken and perfected within four months from the date of such final finding, order, or judgment."
While the facts are not similar to those in the present cases, we had occasion in Page v. Commonwealth, 157 Va. 325, 160 S.E. 33, 34, to discuss "parties in interest" under § 3832, Code 1919 (now § 25-233), which recites under what circumstances a corporation may condemn property of another corporation possessing power of eminent domain. Involved was an appeal from an order of the State Corporation Commission granting the City of Norfolk the right to institute condemnation proceedings for land to be used as a recreation park owned by one railroad company under lease to another railroad company. The companies did not object to its condemnation. Appellants who were citizens, property owners in the immediate vicinity, and taxpayers of Norfolk were allowed to intervene. We held that they were not "parties in interest" within the meaning of the statute; and that it primarily meant as thus used the parties desiring to condemn on the one hand and the owners of the land on the other. It was pointed out that the Commission is expressly authorized by the Constitution to exercise functions broader in scope than those ordinarily under the judicial department and that in the performance of its duties the Commission admits and hears parties who, in a strict legal sense, are not interested parties; that by permitting appellants to intervene it does not affect their legal status as interested parties and it does not necessarily follow that the Commission entertained the view that in a legal sense they were interested parties; that the interest under the statute must be direct, and that appellants' interest was indirect and remote.
In 4 C.J.S. Appeal & Error § 183b, p. 559 it is said:
"In legal acceptation a party or person is aggrieved by a judgment, order, or decree, so as to be entitled to appeal or sue out a writ of error, whenever it operates prejudicially and directly upon his property or pecuniary rights or interest, or upon his personal rights, and only when it has such effect. The word `aggrieved' in a statute, it has been held, refers to a substantial grievance, a denial of some personal or property right, legal or equitable, or the imposition upon a party of a burden or obligation; * * *."
In American Petroleum Exchange v. Public Service Commission, 238 Mo.App. 92, 176 S.W.2d 533, the meaning of "aggrieved" in reference to the right to appeal was considered. There the Highway Commission was authorized in 1931 by the Public Service Commission to construct a grade crossing on a certain road at its intersection with the Missouri Pacific railroad tracks on condition that automatic light signals be installed and maintained. Later structures were erected at the intersection upon the railroad's right of way by persons and corporations under leases granted them. Included was a filling station owned by appellant, American Petroleum Exchange. Pursuant to a motion filed by the Highway Commission to modify the order, notice of the hearing was given appellant, among others, on the theory it was an interested party. The Public Service Commission ordered Missouri Pacific to remove or have removed all *227 buildings and other obstructions which obstructed sight on the right of way at the crossing for a distance of 200 feet in each direction from the center of the highway. The Circuit Court affirmed the Commission's order and appellant appealed to the Supreme Court of that State alleging a constitutional provision of the State had been violated. The court held that no constitutional question was involved and transferred the case to the Kansas City Court of Appeals. Mo., 172 S.W.2d 952, 955. In so doing it made the following observation:
"* * * It is to be noted, however, that the commission did not order the American Petroleum Exchange to do anything. The modified order directs the railroad to remove or have removed all buildings, pumps, lights and other obstructions which obstruct sight distances at the crossing. It directs the State Highway Commission to prohibit parking on the shoulders of its highway for certain distances. But the order is not addressed to the appellant and does not command it to do anything * * *."
Upon transfer of the case, the Public Service Commission filed a motion to dismiss the appeal on the grounds that appellant was not "aggrieved" by the judgment of the lower court. The motion to dismiss the appeal was sustained and it is stated in the American Petroleum Exchange case, supra, 238 Mo.App. at page 96, 176 S.W.2d at page 534:
"In order for a party to be aggrieved his substantial interest must be directly affected. The judgment must act directly on his rights and they must not merely be collaterally or incidentally involved.
* * * * * *
"A party is not aggrieved by a judgment unless it affects directly some pecuniary or property right or interest of his, nor does the right of an appeal exist in favor of a party aggrieved or offended by the mere disclosure of facts brought about by the carrying out of an order or decree of court that ultimately may result disastrously to the party. State ex rel. People's Railway Company v. Talty, 139 Mo. 379, 391, 40 S.W. 942.
* * * * * *
"It is difficult to see how appellant can be said to be aggrieved, if it be true, as held by the Supreme Court, that it has not been ordered to do anything, the order not being even addressed to it and, where the Commission did not attempt to exercise any authority over it."
In Wiggin v. Swett, 6 Metc. 194, 197, 47 Mass. 194, 39 Am.Dec. 716, the court said: "A party aggrieved is one whose pecuniary interest is directly affected by the decree; one whose right of property may be established or divested by the decree." See also King v. Stark County, 72 N.D. 717, 10 N.W.2d 877; 2A Words and Phrases, Aggrieved, p. 619.
In the cases at bar the records show that appellant was not a formal party to the proceedings before the Commission although its counsel was present at the hearings and participated therein. The applications for adjustment of insurance rates in question were filed on behalf of the insurers. The formulas were used as a yardstick by which the rates as proposed were to be measured. While it may be argued that the inclusion of 20% for commissions or production costs, instead of 25% agents customarily received, in the rating formulas is suggestive or persuasive for the insurer to follow, it cannot be said that this percentage is controlling or binding on the insurers or members of the Virginia Association of Insurance Agents. The Commission lacks the power or authority to fix rate of commissions to be paid by insurers to their agents and insurers may continue to pay their agents 25% commissions if they so desire. The *228 20% for commissions or production costs was employed by the Commission along with other items to ascertain and fix fair and equitable rates to be charged for the insurance.
The orders complained of were not addressed to appellant and they neither took nor attempted to take any right, privilege, property or thing from it. They did not adjudicate any of appellant's rights, did not direct it to do anything and they do not directly affect it. Appellant is a legal entity separate and distinct from those it was created to serve. The record does not disclose that it has any contractual relationship with any insurers. This corporate entity itself could hardly be considered a party in interest or a party aggrieved by the orders of the Commission. Any interest appellant or its members may have is at most indirect. In the order of July 11, 1958 pertaining to automobile bodily injury and property damage liability insurance rates, the Commission in deciding the insurance rates to be fixed considered and included in the formula that 5.5% of the premium dollar was a reasonable allowance for administration expenses. Commissioner Dillon in his opinion aptly asked the question: "Could an Association of Insurance Company employees appeal from the order of the Commission on the theory that if the order had allowed 6% for administration expenses the companies could afford to pay them higher salaries?" We think not.
We are mindful that we said in Commonwealth v. Sharp, 155 Va. 714, 717, 156 S.E. 570, that the word "aggrieved" is broader in its scope than the phrase "party in interest". Yet the meaning is not broad enough to classify appellant in the instant cases as "aggrieved."
Our conclusion is that appellant is not a "party in interest" or a "party aggrieved" under the statute and, therefore, it has no standing to prosecute these appeals. In view of this finding, we deem it unnecessary to discuss the other questions presented for our consideration.
For the reasons stated the appeals are
Dismissed.