# CIRCUIT COURT OF WARREN COUNTY

Carolinas Cement Co.

v.

Zoning Appeals Board
of Warren County et al.

January 19, 2000

Case Nos. (Law) 99-321, 00-6, 00-7

BY JUDGE JOHN E. WETSEL, JR.

These cases came to be heard on January 13, 2000, on Riverton's and the Frittses' Appeals from the Board of Zoning Appeals' decisions of December 1, 1999, in Warren Law No. 99-321 and of January 5, 2000, in Warren Law Nos. 00-6 and 00-7, that the landowners were not aggrieved parties and therefore not entitled to appeal a by-right use decision to the Board of Zoning Appeals and related procedural issues. Thomas M. Lawson, Esquire, appeared

for Carolinas Cement Company; Richard R. G. Hobson, Sean F. Murphy, and Jeffrey Novak, Esquires, appeared for Riverton Investment Corporation et al.; Clifford A. Athey, Jr., Esquire, appeared for the Frittses; and Douglas W. Napier, Esquire, the Warren County Attorney, appeared for Warren County and the Warren County Board of Zoning Appeals.

These cases are the latest iterations of the concatenation of cases which have arisen in the last six months as a result of Carolinas Cement's efforts to construct a cement distribution facility in Warren County. There have been six cases in this court, and there is yet another case pending in the Circuit Court of Frederick County between Carolinas Cement and Riverton.

## I. *Statement of Material Facts*

The following material facts are not in dispute.

The primary issue in these cases concerns the right of three Warren County landowners and taxpayers (collectively referred to as the "Landowners") to challenge the approval of Carolinas Cement's (hereinafter referred to by its trade name of Roanoke Cement Company) use application to construct a cement and fly ash terminal and distribution facility in an Industrial District in Warren County.

In August 1999, this Court decided in Warren County Law Nos. 99-158 and 99-168 that the proposed warehousing and distribution use of Roanoke Cement was a by-right use in an Industrial District in Warren County. While the proposed use was the same in that case as that in the cases now under review, it was a lot in a different Industrial District in Warren County, and the Landowners in the cases now before the court were not parties to those earlier cases. That earlier by-right use decision has been appealed to the Supreme Court by the parties in those earlier cases.

In October 1999, the Warren County Zoning Administrator and the Warren County Planning Commission approved Roanoke Cement's application for the EDA lot at issue in this case as a by-right use, and it is this by-right use decision which the landowners appealed to the Board of Zoning Appeals and which is ultimately at issue in these cases.

On September 3, 1999, and again on November 12, 1999, because of some Freedom of Information concerns with the September vote, the Economic Development Authority of the Town of Front Royal and the County of Warren, Virginia, (the "EDA") voted to sell a lot, which it owns in the Kelly Industrial Park in Warren County, to Roanoke Cement Company. The minutes of that meeting recite that the "sale . . . is in accordance with the purposes of industrial development authorities set forth by the General Assembly . . . and is for the benefit of the inhabitants of the Common-wealth . . . through the increase of their commerce or through the promotion of their . . . prosperity." Minutes, pp. 2-3.

While Roanoke Cement Company has other facilities in Virginia, it is new to Warren County, and it plans to build a bulk storage facility on the EDA lot on which it will store and distribute cement in bulk.

Riverton, which for a long time has had a facility in Warren County, is a competitor of Roanoke Cement, and in paragraph 47 of a Bill of Complaint filed in Warren County Chancery No. 99-220, it averred that:

> The proposed sale will . . . confer upon Roanoke a competitive advantage to the significant detriment of Riverton without any corresponding benefit to the inhabitants of the Commonwealth . . .

In other litigation, Roanoke Cement has claimed that Riverton is behind all the litigation in which Roanoke had been embroiled in the last six months.

In addition to being a competitor of Roanoke Cement, Riverton also owns 2.8 acres of agriculturally zoned land within 5,325 feet of the site of Roanoke Cement's proposed facility on the EDA lot and 78.3 acres of agriculturally zoned land which lies within 3,889 feet of Roanoke's proposed facility. At the hearing before the Board of Zoning Appeals, Riverton produced no evidence other than its self assertion as to any diminution in value or harm to its property by reason of Roanoke Cement's proposed facility.

The Frittses residence is 2,302 feet from the site to be sold to Roanoke Cement.

The Landowners claim that:

> The proposed facility, which will be in sight of the Landowners' properties (as testified to before the BZA by a licensed engineer), will include not only 78' high silos, but constant tractor-trailer traffic,

noise, and emissions of more than a ton of cement and fly ash dust per year. These nearby Warren County taxpayers and property owners will bear the brunt of the development of the site, including diminution in the value and marketability of their properties, particularly if the determination that the County may not impose any conditions on the proposed use is permitted to stand.

Landowner's Brief, p. 22.

Roanoke Cement's proposed facility will have two storage silos which will be about 75 feet tall and of lesser width. The facility is be located in an established industrial park in which several other industrial facilities already exist including a Penn-Tab plant approximately 50 feet in height.

At the Board of Zoning Appeals hearing on January 5, 2000, Mr. and Mrs. Fritts introduced two affidavits by professional real estate appraisers. These appraisals in identical wording stated:

> Obviously, the construction of the cement and fly-ash terminal will not enhance the value of the subject property [the Frittses' property]. Our experience is that these types of heavy industry tend to adversely affect the quiet enjoyment of nearby residential property. Given a choice between a dwelling located near a heavy industrial use and one located further away, the dwelling located the greatest distance away from the effects of the heavy industrial use would tend to sell for a higher value and/or have less marketing time. . . . However, our research did not reveal suitable comparable data that would enable us to accurately measure the diminution value to the Frittses' property after the construction of the cement and fly-ash terminal.
>
> In summary, there is insufficient market data to measure the diminution of value of the subject property if the cement and fly-ash terminal is constructed; however, our experience indicates that these heavy industrial uses do tend to have some depressing effect on nearby residential property values.

Riverton produced both testimony and a letter from a licensed appraiser that Roanoke Cement's proposed facility "would have a negative impact on their [Riverton's properties in the vicinity] market value." Exhibit 25; Hearing Transcript, pp. 84-87.

From the outset of the Board of Zoning Appeals hearing on January 5, 2000, there was considerable discussion about whether the Landowners had

standing as aggrieved parties to appeal to the Board of Zoning Appeals. Hearing Transcript, pp. 64-68, 87-89, 90. At the hearing, the County Attorney correctly observed that:

> there is a lot of law in other states, not so much in Virginia. I am going to read from a treatise on local government law, and it says: "A person, ordinarily, will not be deemed an aggrieved person with standing to attack the zoning of another's property unless he can allege that he will be specifically and injuriously affected in his property or other legal rights. A person complaining about municipal action in zoning or rezoning someone's else's property has the burden of proving that he will suffer damage by reason of such action which differs from that suffered by the general public."

Hearing Transcript, pp. 64-65.

At the January 5, 2000, hearing after considering evidence on the distance from the Landowners' property to the Roanoke Cement EDA lot and the potential effect of the Roanoke Cement facility on the Landowners' properties, the Board of Zoning Appeals voted that Riverton was not an aggrieved party with standing to pursue this appeal to the Board of Zoning Appeals, because of the distance Riverton was from the proposed facility, because Riverton has shown no special or substantial damage to them, that there was no showing of any pollution different from what was already existing; and the major reason Riverton opposed the proposed facility is because of the business competition. The Board of Zoning Appeals also decided that the Frittses were not aggrieved parties and did not have standing to pursue the appeal to the Board of Zoning Appeals, because of the distance involved between the Frittses' property and the proposed facility, because of the character of the neighborhood in that there are other industrial uses in the vicinity; and that the Frittses have not shown any special or substantial damage to their property which differs from that suffered by the public generally.

Riverton, which is a competitor of Roanoke Cement, has a very large and intensive industrial facility on a site within a mile and an half of both Roanoke Cement's proposed site and the Frittses' residence.

The Board of Zoning Appeals decided that the Landowners did not have standing as aggrieved parties to appeal the by-right use decision to the Board of Zoning Appeals, and the Landowners have filed writs of certiorari to this Court seeking judicial review of that decision.

An appeal of a Board of Zoning Appeals decision to a circuit court is not a trial *de novo*, and the circuit court's function is limited to examining the scope of the Board of Zoning Appeals proceeding and considering the correctness of the Board of Zoning Appeals decision. *Foster v. Geller*, 248 Va. 563, 449 S.E.2d 802 (1994). "The decision of a board of zoning appeals is presumed to be correct on appeal to a circuit court; the appealing party bears the burden of showing that the board applied erroneous principles of law or was plainly wrong and in violation of the purpose and intent of the zoning ordinance." *Masterson v. Board of Zoning Appeals*, 233 Va. 37, 44, 353 S.E.2d 727 (1987). The Board of Zoning Appeals heard the Landowners' evidence and determined that they did not have standing, and the issue on appeal is whether the Board of Zoning Appeals correctly applied the law with respect to the Landowners' standing as aggrieved parties to appeal to the Board of Zoning Appeals.

The threshold issue in these cases is whether Riverton and the Frittses are aggrieved persons who have standing to appeal the by-right use decision of the Deputy Planning Director to the Board of Zoning Appeals and to appeal the standing decision of the Board of Zoning Appeals to the Circuit Court. Not every person spoiling for a fight in a land use case is entitled to enter the fray. Generally, there is no private right to enforce zoning ordinances, nor does status as a taxpayer confer standing, and the burden is on the claimant to show his aggrieved status. *See* 83 Am. Jur. 2d, *Zoning and Planning*, §§ 1033 and 1038. In a statutory proceeding, a party that is neither within the purview nor the pale of the governing statute is confronted by a significant hurdle, when his right to maintain his action is challenged. Care must be taken not to confuse the general right to be heard at a public hearing with the more specific, legal right to participate as a party. Frequently, landowners disgruntled with the decision of a Board of Zoning Appeals, Planning Commission, or Board of Supervisors then try to carry the day with an appeal to the Circuit Court.

The concept of "aggrieved party" has been developed to limit the class of persons legally able to participate as a party in a land use case. *See generally* 83 Am. Jur. 2d, *Zoning*, § 1027, and 8A McQuillen, *Municipal Corporations*, § 25.318.10 (3rd ed.). Virginia Code § 15.2-2311(A) provides that:

An appeal to the board [of zoning appeals] may be taken by any *person aggrieved* or by any officer, department, board or bureau of the locality affected by any decision of the zoning administrator or

from any order, requirement, decision or determination made by any other administrative officer in the administration or enforcement of this article or any ordinance adopted pursuant thereto.

(Emphasis added.) Virginia Code § 15.2-2311(A) distinguishes between appeals by the locality's officers and departments, who need only be "affected by" and appeals by all other persons, who must be "aggrieved" in order to appeal. Virginia Code § 15.2-2314 also incorporates the concept of aggrieved party, and it provides that:

Any *person or persons jointly or severally aggrieved* by any decision of the board of zoning appeals, or any aggrieved taxpayer or any officer, department, board or bureau of the locality, may present to the circuit court for the county or city a petition specifying the grounds on which aggrieved within thirty days after the filing of the decision in the office of the board.

(Emphasis added.)

The standing issue in this case presents a legal Gordian Knot. The County Attorney made commendable efforts to inform the Board of Zoning Appeals on the standing question, and he correctly observed at the outset of the January 5, 2000, hearing, that while there is some Virginia law on the general issue as to who is an aggrieved party, there is no Virginia law on the procedure to be applied by the Board of Zoning Appeals in making its decision as to whether the Landowners have standing to appeal to the Board of Zoning Appeals. In terms of the reported cases in Virginia, this case appears to be one of first impression. While the general principles of substantive law cited to the Board of Zoning Appeals by the County Attorney were correct, not all of the principles cited to the Board of Zoning Appeals applied to the issues before the Board of Zoning Appeals. For example, the validity of the zoning ordinance was not at issue, so the comment that "The fact that loss will be sustained through depreciation of the value of property in or adjoining the area rezoned is not controlling in determining whether the zoning ordinance is so arbitrary and unreasonable as to be invalid." Hearing Transcript, p. 67. Much of the focus of the discussion before the Board of Zoning Appeals was on the proximity of the Landowner's property to the EDA lot, and the Board of Zoning Appeals apparently applied a "substantial damage" test as opposed to "some damage or burden," a distinction which is critical to the result. Hearing Transcript, pp. 110, 117, and 118. Although the Supreme Court has used the term "substantial grievance," *Virginia Beach Beautification Comm'n v. Board*

*of Zoning*, 231 Va. 415, 420, 344 S.E.2d 899, 902-03 (1986), it has never applied a "substantial damage" test, rather what is required to confer standing is simply proof of *some* damage "different from that suffered by the public at large." *Id*.

Since the substantive by-right use issue has previously been considered by the Board of Zoning Appeals with respect to Roanoke Cement's application to construct its facility on the river lot, which was the exact same facility, in an identical industrial zoning district in Warren County, involving the same lawyers representing the landowners, the Board of Zoning Appeals', Hearing Transcript pp. 106-08, and Roanoke Cement's potential frustration with the reconsideration of what appears to be the same issue is understandable. However, from a technical legal standpoint, the EDA lot is a different property; consequently, the Landowners are different parties, so this a new case and not a reconsideration of the earlier case involving the river lot.

This case turns upon whether the Land Owners are "aggrieved persons" within the meaning of Va. Code §§ 15.2-2311 and 15.2-2314 and are thus entitled to pursue their appeals from the Board of Zoning Appeals' December 1, 1999, and January 5, 2000, decisions. The term "aggrieved" is not defined in either the state statutes or the Warren County Ordinance. However, in *Virginia Beach Beautification Comm'n v. Board of Zoning*, 231 Va. 415, 344 S.E.2d 899, 902-03 (1986), the Virginia Beach Beautification Commission challenged the Board of Zoning Appeals' granting of a height and setback variance, and the Supreme Court ruled that the Beautification Commission had no standing to appeal the Board of Zoning Appeals decision because it was not an "aggrieved" person within the meaning of Virginia Code § 15.1-497, now § 15.2-2314, because the Commission "neither owns nor occupies real property within or in close proximity to the property that is the subject of the variance application." *Id*. at 420. In its ruling, the Supreme Court stated:

> The term "aggrieved" has a settled meaning in Virginia when it becomes necessary to determine who is a proper party to seek court relief from an adverse decision. In order for a petitioner to be "aggrieved," it must affirmatively appear that such person has some direct interest in the subject matter of the proceeding that he seeks to attack. *Nicholas v. Lawrence*, 161 Va. 589, 592, 171 S.E. 673, 674 (1933). The petitioner "must show that he has an immediate, pecuniary and substantial interest in the litigation, and not a remote or indirect interest." *Id*. at 593. Thus, it is not sufficient that the sole interest of the petitioner is to advance some perceived public right or to redress some anticipated public injury when the only wrong he has

suffered is in common with other persons similarly situated. *The word "aggrieved" in a statute contemplates a substantial grievance and means a denial of some personal or property right, legal or equitable, or imposition of a burden upon the petitioner different from that suffered by the public at large. Insurance Ass'n v. Commonwealth*, 201 Va. 249, 253, 110 S.E.2d 223, 226 (1986).

*Id.* at 419-20 (emphasis added).

Similarly, in *Vulcan Materials v. Board of Supervisors*, 248 Va. 18, 24, 445 S.E.2d 97 (1994), the Supreme Court ruled that:

Code § 15.1-496.1 [now § 15.2-2311] requires a person to be "aggrieved" by a "decision or determination made by any . . . administrative officer in the administration" of any county ordinance adopted pursuant to the state enabling statutes. This language is clear and unambiguous. The meaning of "aggrieved" is settled. When used in a statute, the term contemplates "a denial of some personal or property right, legal or equitable."

(Cites omitted.) *See also Commonwealth v. Harley*, 256 Va. 216, 504 S.E.2d 852 (1999) ("party aggrieved" within the meaning of § 17-116.08). In this case, no denial of a property right is asserted, so the issue is whether the proposed project would impose "some" burden upon the Landowners that is different than that suffered by the public at large.

The first step in the standing analysis in a land use case is to determine whether the property of the landowners who are challenging the proposed use is within the zone of potential harm. Proximity of the claimant's land to the site of controversy is a factor which the courts first consider in their standing decision in land use cases. *See* 83 Am. Jur. 2d, *Zoning and Planning*, § 1037. "Proximity" and "in the vicinity" are relative concepts, and the courts in other states considering this issue have reached varying results. "Landowners have been granted standing where their land was in the immediate vicinity, within 100 feet, within 200 feet, within 500 yards, within three blocks, within a quarter of a mile, and within 2 miles of the property subject to the decision for which review is sought." 83 Am. Jur. 2d, *Zoning and Planning*, § 1036. The landowners in this case cite such cases to the court. *See e.g. Fedder v. Mobile Premix Concrete, Inc.*, 768 P.2d 711 (Colo. App. 1988) (the court held that nearby landowners had standing to challenge the grant of a variance for the construction of a concrete plant, where the applicant proposed to locate the plant one-half mile from the area where the landowners lived, and it would

cause dust problems and increased traffic on the road that served the landowners' homes); and *Thal v. County of Santa Cruz*, 204 Cal. App. 2d 645 (1962) (a citizen-taxpayer living within a half-mile of a proposed memorial park and across the road from it had standing to challenge the planning commission's grant of a use permit). There is a veritable sea of authority on the issue of proximity from which one may pluck a fish to suit one's intellectual taste, but standing depends upon more than simply the palate or eye of the beholder with respect to the resolution of the standing question.

The Virginia enabling statutes recognize that proximity is an important factor in land use cases, so they expressly provide for actual notice to adjacent property owners where substantial zoning changes are at issue. Virginia Code § 15.2-2204(B) provides that notice shall be given to "the owners of . . . all abutting property and property immediately across the street or road from the property affected . . ." and § 15.2-2286(4) requires that "all adjoining property owners" be given written notice of a proposed variance.

In Virginia, the first class of persons who have standing as aggrieved persons to challenge zoning decisions are those directly involved, like the applicant Roanoke Cement and the locality, Warren County. The second class of persons who have standing are the abutting landowners. *See Barton v. Town of Middleburg*, 27 Va. Cir. 20 (Loudoun 1992) (owner of adjacent land has standing to challenge site plan), and 83 Am. Jur. 2d, *Zoning and Planing*, § 1035. The third potential class of "aggrieved persons" are those "persons who own property within, or in close proximity to, the district" of the challenged use, *WANV v. Houff*, 219 Va. 57, 64 (1978), and who suffer a burden different from that of the public at large. Since the Landowners in this case are neither directly involved nor abutting property owners, they fall within the third and most removed class of potentially aggrieved persons and to have standing they must prove that they will suffer "some" burden different from that suffered by the public generally. In reaching that decision, the proximity of the property is only a factor to be considered, it is not conclusive. However, it is axiomatic that the farther from the site of controversy, the higher the hurdle to overcome in proving some harm to their property.

None of the Landowners in this case own property within the Industrial District, but they all claim to own property "within or in close proximity to" the site where Roanoke Cement Company proposes to locate its cement and fly ash terminal. Riverton Investment Corporation owns 2.8 acres of agricultural zoned land that is located within 5,325 feet of the subject property. Riverton Corporation owns 78.3 acres of agricultural zoned land that is located within 3,889 feet of the subject property. The Frittses' residence is located within 2,302 feet of the subject properties.

The Landowners claim that Roanoke Cement's proposed facility will be within sight distance of the Land Owners' properties (as testified to before the Board of Zoning Appeals by a licensed engineer), and that the facility will include not only the 78 feet high silos, but constant tractor-trailer traffic, noise, and emissions of more than a ton of cement and fly ash dust per year. Consequently, these Landowners claim that they will suffer diminution in the value and marketability of their properties, particularly if the determination that the County may not impose any conditions on the proposed use is permitted to stand, and these Landowners submitted evidence from real estate appraisers about the detrimental impact of the proposed use on the use, enjoyment, and value of their properties.

Not only is the law in Virginia silent on the analysis to be undertaken by the factfinder in assessing the evidence of aggrievement, it is also silent on the procedure which the Board of Zoning Appeals is to follow in making that standing decision. A study of the authorities suggests that the following is the proper analysis to apply to determine whether a party has standing as a aggrieved party with respect to appearing before the Board of Zoning Appeals and appealing the decisions of the Board of Zoning Appeals to the circuit court.

First, it must be ascertained whether the petitioner is directly involved or an adjoining property owner. If so, they are entitled to participate by virtue of the governing statutes, and the standing inquiry is ended. Virginia Code §§ 15.2-2311(A), 15.2-2204(B), and 15.2-2286(4).

Second, if the petitioner is not directly involved in the controversy and is not an adjoining landowner, then the inquiry is whether the landowner may potentially be within the third class of aggrieved persons, and the resolution of the landowner's aggrieved status is a twofold inquiry. The first step is to determine whether the landowner owns property "within, or in close proximity to, the [zoning] district" of the challenged use. *WANV v. Houff*, 219 Va. 57, 64 (1978). To determine whether the landowner's property is in close proximity to the challenged use, the landowner must prove that the challenged use could be seen, smelled, or heard on his property, or that it will discharge emissions onto his property. If the landowner cannot prove any of these physical factors, then his property is not in close proximity, and there could be no legal predicate from which to infer that his property was damaged. If the landowner satisfies the proximity test, then the second step is to determine whether he suffers a "denial of some personal or property right, legal or equitable," *Virginia Beach Beautification Comm'n v. Board of Zoning*, 231 Va. 415, 419-20, 344 S.E.2d 899, 902-03 (1986), *see e.g. Cupp v. Board of Supervisors*, 227 Va. 580, 318 S.E.2d 407 (1984) (restriction on

grandfathered right to use nonconforming property as a nursery), or whether a burden is imposed on his property which is not suffered by the public at large. *Virginia Beach Beautification Comm'n v. Board of Zoning*, 231 Va. 415, 344 S.E.2d 899, 902-03 (1986). A burden special to the property may be a diminution in value. It would appear that any depreciation in the value of property arising from the manner in which a proposed use is conducted is sufficient to confer standing to challenge the proposed use, and the diminution in value would not have to be substantial to confer standing.

The standing procedural conundrum is further complicated by the fact that this issue arises in a quasi-judicial proceeding not a law case, but in suits filed in a court, "[t]he right to sue constitutes an integral part of the plaintiff's case . . . and the facts showing the right of the plaintiff to sue must appear." 59 Am. Jur. 2d, *Parties*, § 240. In deciding standing cases in administrative appeals, in the absence of a governing statute or regulation, courts resort to general principles of law to determine standing. *See Commonwealth v. Harley*, 256 Va. 216, 504 S.E.2d 852 (1999) ("party aggrieved" within the meaning of § 17-116.08), and *Environmental Defense Fund v. State Water Control Bd.*, 12 Va. App. 456, 404 S.E.2d 728 (1991) (non-profit environmental group was not an aggrieved owner entitled to an appeal under § 62.1-44.29). The County has cited several cases from other jurisdictions in support of its contention that the standing decision of the board of zoning appeals is an issue which comes to the reviewing court with the same imprimatur as any other fact decision of the board of zoning appeals. However, these cases do not expressly discuss this point, and on the contrary, state "Their aggrievement presented an issue of fact for the determination of the trial court . . . ." *Chesson v. Zoning Commission*, 254 A.2d 864, 865 (Conn. 1969); *see also Shore Acres Imp. Ass'n v. Anne Arundel Co. Bd. of Ap.*, 247 A.2d 402 (1969) (court dismissed association's petition for appeal because court found that the association did not have standing to appeal although it was apparently permitted to participate in the board of zoning appeals proceeding). These cases illustrate the point that while "aggrieved party" is a concept of general application, it is also a concept which is colored by the context in which it arises, so care must be exercised in relying on cases discussing the principle but in a different context such as from another state or arising under different statutes. For example, the Court of Appeals in *Pearsall v. Virginia Racing Comm'n.*, 26 Va. App. 376, 380-81, 494 S.E.2d 879 (1998), applied the concept in a case involving the review of a licensing decision by the Virginia Racing Commission and held that since the plaintiff Monument Park Association neither owned nor occupied any real property, no personal or property right of the Association was adjudicated by the Virginia Racing Commission, so the Park Association

had no standing as an aggrieved party to file an appeal in court of the Racing Commission's licensing decision. *Id.* at 381. In *CCA v. State Air Pollution Control Bd.*, 13 Va. App. 430, 412 S.E.2d 715 (1991), the Court of Appeals held that the legal phrase "owner" in Virginia Code § 10.1-1319 did not include "owners of real property who live in the vicinity of the source of pollution." *Id.* at 440. Therefore, those property owners in the vicinity were not aggrieved persons within the meaning of the statutes and regulations governing the State Air Pollution Control Board.

The Landowners presented evidence that they were within the zone of harm and some evidence that their property would be diminished in value as a result of the proposed facility, and the Board of Zoning Appeals was apparently in a quandary about how much the Landowners had to be damaged in order to have standing. Clearly, the Landowners presented a prima facie case on standing to the Board of Zoning Appeals, that is presentation of facts upon which a reasonable person could conclude what the Landowners asserted was correct, and it does appear that the Board of Zoning Appeals may have been confused about the quantum of damage required to confer standing, and, for that reason, this Court is going to remand this case for a reconsideration of the standing issue under what it hopes is a clarified statement of the rather turbid law on the question of standing in land use cases.

The only guidance which the Court has in this case are general principles governing statutory construction, such as a "statute permitting aggrieved persons to appeal is to be liberally construed," *Rathkopf's The Law of Zoning and Planning*, § 37.03 (4th ed. 1999), and the Court of Appeals statement that "[r]eal property owners *who allege* that their property will suffer a decline in value as a result of the proposed action have 'a sufficient interest in the subject matter of the case . . . .'" *CCA v. State Air Pollution Control Bd.*, 13 Va. App. 430, 434, 412 S.E.2d 715 (1991). Alleging is different than proving, and this concept that an allegation is sufficient to confer standing does not appear in any of the cases cited by the Court of Appeals in support of this statement. In *Cupp v. Board of Supervisors*, 227 Va. 580, 318 S.E.2d 407 (1984), the Supreme Court applied the federal standing test to determine whether the Cupps who owned a nursery and whose rights to sell products would be adversely affected by a new zoning ordinance had standing to file a declaratory judgment action challenging the application of the zoning ordinance to their grandfathered use. The Supreme Court in *Cupp* relied upon the federal standing principles set forth in *Duke Power Co. v. Carolina Env. Study Gp.*, 438 U.S. 59, 57 L. Ed. 2d 595 (1978), and *Baker v. Carr*, 369 U.S. 186, 7 L. Ed. 2d 663 (1962). *Baker* was a citizens' challenge to the 1901 Tennessee Voter Apportionment Act, and property values were not an issue

in that case. In *Duke Power*, reduction in property values was but one of numerous claimed adverse effects of a proposed nuclear power plant, and the District Court held a four day hearing on the issue of standing; so clearly more than mere allegations of reduction in property value were required to confer standing. Accordingly, since *CCA* arises in a different context and under a different statute, it has no direct application to appeals to the Board of Zoning Appeals.

The law strives to ensure that judicial decisions like those of the this Court and those of the Board of Zoning Appeals will be the product of reason applied according to established principles and not the result of the application of will applied according to whim. If the standing issue now before this court is to be decided according to established principles that will produce consistent results, then judicial abstractions like "some damage" or "some burden" to landowner different from that suffered by the public at large offer little or no practical guidance to the factfinder who is asked to apply those abstract concepts in a concrete world. "Some" like "substantial" is a relative or qualitative term, not a quantitative measure. The problem is further compounded when the relative term is applied to a quantitative concept like market value. In terms of impact upon the landowner's property, is "some" burden or damage to be measured in some minimum level of absolute dollar terms, or is it too a relative concept dependent upon the proportion which the burden bears to the whole? For example, even today, $1,000.00 is not considered a nominal sum, but if a million dollar parcel of property were reduced in market value $1,000.00, that is one tenth of one percent, an amount too minuscule to be measured by most commonly accepted modern appraisal methods. These problems are a good argument that the term "some" damage or burden should be some threshold jurisdictional level set in a dollar amount, otherwise, one Board of Zoning Appeals may consider a dollar, as some damage, another $100.00, another $1,000.00, and another $10,000.00. The General Assembly can set threshold jurisdictional requirements in dollar amounts, *see* Virginia Code § 16.1-92 (claims of more than $3,000 can be removed from the district court to the circuit court) and Virginia Code § 17.1-513 (circuit court has original jurisdiction of civil claims of $100.00 or more), but it has not elected to do so in land use cases. Therefore, the only methodology to apply is that inferred from the Supreme Court decisions on proof of damages in general.

> The word "aggrieved" in a [land use] statute contemplates a substantial grievance and means a denial of some personal or property

right, legal or equitable, or imposition of a burden upon the petitioner different from that suffered by the public at large.

*Virginia Beach Beautification Comm'n v. Board of Zoning,* 231 Va. 415, 419-20, 344 S.E.2d 899, 902-03 (1986), *citing Insurance Ass'n v. Commonwealth,* 201 Va. 249, 253, 110 S.E.2d 223, 226 (1986).

This court is bound by the terms used by the Supreme Court, and it said "a burden upon the petitioner," it did not say a "substantial burden." In this context, "substantial" modifies grievance not burden, and it is proof of "some" burden which establishes the requisite "substantial interest." There is a range of damages that a use of real property may cause to distant properties like those of the Landowners — none, some or any, or substantial or major. If "some or any" burden or damage is caused to the landowner different than that caused to the public at large, then the landowner has standing as an "aggrieved party" to appeal to the Board of Zoning Appeals.

There is no authority on the quantum of proof required of the landowner to establish the damage or burden to his property, so this court will resort to the general principles of law applying generally to the proof of damages. Therefore, if the landowner has proven to the satisfaction of the Board of Zoning Appeals that he or she is in the zone of potential harm, that satisfies the proximity test, then the general principles applying to proof of damage should be applied by the Board of Zoning Appeals to determine whether the landowners have suffered some burden or damage to their property different from that of the public at large. For guidance the Court has modified the general jury instruction applying to proof of damages, Va. Model Jury Instruction No. 9.010, and the yardstick which the Board of Zoning Appeals should apply in determining whether the landowner has proved some damage to his property is as follows:

> The burden is on the Landowner to prove by competent evidence each item of damage he claims and to prove that each item of damage to his property will be caused by the proposed use of the property in controversy. The Landowner is not required to prove the exact amount of the damage to his property, but he must show sufficient facts and circumstances to permit the Board of Zoning Appeals to make a reasonable estimate of each item of damage which he claims. If the Landowner fails to do so, then he has no standing as an aggrieved party because he has failed to prove that his property has suffered some damage or some burden different than that of the public at large.

This is a principle which juries apply every day in the Commonwealth to assess damages. This is not a perfect solution, but it is the best that the Court can fashion given the dearth of authority on the point. Given the uncertainty of the law on this point, this case will be remanded to the Board of Zoning Appeals for further consideration consistent with the principles expressed in this opinion.

In Virginia, the zoning ordinance enabling legislation grants to "any person aggrieved" by any order, requirement, decision, or determination made by any administrative officer in the administration of any ordinance adopted pursuant thereto a right of appeal to the Board of Zoning Appeals. Virginia Code § 15.2-2311(A). Under the Warren County Zoning Ordinance § 180-64(A)(8), the Planning Commission is given the same administrative powers with respect to new by-right uses as those conferred upon the Zoning Administrator under Warren County Code § 180-64(A)(6). The Planning Commission is given the authority to determine the impact of applications for rezoning, subdivision, zoning permits, zoning variances, and conditional use permits, Warren County Zoning Ordinance § 180-64(A)(1), to overrule the Zoning Administrator, § 180-64(A)(2), and to approve and disapprove by-right use applications, § 180-64(A)(5)-(6). Because these determinations concern the administration and enforcement of the Zoning Ordinance, any person aggrieved by such a determination has a right of appeal to the Board of Zoning Appeals pursuant to Virginia Code § 15.2-2311. Accordingly, it would appear that the initial by-right use determination is an issue which an aggrieved party may appeal to the Board of Zoning Appeals, despite the fact that an appeal would also lie to the Planning Commission under the Warren County Ordinance and the facts of this case.

To the extent there is tension between the provisions providing for appeal to the Planning Commission, then to the Board of Supervisors, *see* Warren County Zoning Ordinance § 180-64, and then to this Court, and the right to appeal to the Board of Zoning Appeals pursuant to Virginia Code § 15.2-2311, both provisions should be given effect to the extent possible. "The primary objective of statutory construction is to ascertain and give effect to legislative intent." *Crews v. Commonwealth*, 3 Va. App. 531, 535-36, 352 S.E.2d 1, 3 (1987) (*quoting Turner v. Commonwealth*, 226 Va. 456, 459, 309 S.E.2d 337, 338 (1983)). In interpreting statutes, "courts should give the fullest possible effect to the legislative intent embodied in the entire statutory enactment." *Virginia Real Estate Bd. v. Clay*, 9 Va. App. 152, 157, 384 S.E.2d 622, 625 (1989). To do so, "two statutes which are closely interrelated must be read and construed together and effect given to all of their provisions." *CB Trucking, Inc. v. Griffin*, 5 Va. App. 542, 547-48, 365 S.E.2d

334 (1988) (citations omitted). Potentially conflicting statutes should be harmonized to give force and effect to each. *See Board of Supervisors v. Marshall*, 215 Va. 756, 761, 214 S.E.2d 146, 150 (1975).

Applying these rules of statutory construction to the tension between the two appeal procedures leads to the conclusion that the two may overlap, and to the extent that they do, when an aggrieved party exercises his right to appeal under one of the two available procedures, then he has elected his remedy, which in this case was appeal to the Board of Zoning Appeals, and that appeal procedure then becomes his exclusive route of remedy.

Consonant with standing principles in general, a land use permit applicant must have an actual or contingent interest in the subject property to challenge the action of a Planning Commission or administrative agency with respect to such property. *Cf. Henrico County v. F. & W., Inc.*, 222 Va. 218, 223, 278 S.E.2d 859, 862 (1981); *Lynchburg Traffic Bureau v. Norfolk and Western Ry.*, 207 Va. 107, 108, 147 S.E.2d 744, 745 (1966). *See also Concerned Taxpayers of Brunswick Co. v. County of Brunswick*, 249 Va. 320, 325, 455 S.E.2d 712, 714-15 (1995) (Concerned Taxpayer group has no standing at common law or under the Public Procurement Act to challenge expenditure of public funds). Roanoke Cement has a contract to purchase the EDA lot, so it is a party whose interests are directly affected by the Board of Zoning Appeals decision. Roanoke Cement's application was not void ab initio as claimed by the Landowners, and that issue is not be considered by the Board of Zoning Appeals on the remand from this court, because any such initial standing defect has now been cured.

Since no *ultra vires* action is an issue in this case despite an argument to the contrary by the Landowners, the fact that Virginia law recognizes taxpayer standing to challenge an *ultra vires* act has no application to this case. *See, e.g., Concerned Residents of Gloucester County v. Gloucester County Supervisors*, 34 Va. Cir. 535 (Gloucester 1993) (Winston, J.), *aff'd*, 248 Va. 488, 449 S.E.2d 787 (1994), in which the court held that taxpayers had standing to challenge the unauthorized appropriation and unlawful use of county funds by the Board of Supervisors for a landfill, regardless of whether the taxpayers' properties were immediately adjacent to the contested landfill. *Id.* at 535 (*citing Gordon v. Board of Supervisors*, 207 Va. 827, 153 S.E.2d 270 (1967); *Armstrong v. Henrico County*, 212 Va. 66 (1971)). Therefore, unless the Landowners are aggrieved persons within the contemplation of the state zoning statutes and the Warren County Zoning Ordinances, they have no standing to maintain their appeal of the Planning Director's by-right use decision.

### III. *Decision*

For the foregoing reasons, it is adjudged and ordered that:

1. The Board of Zoning Appeals' decision that the Landowners were not aggrieved parties within the meaning of the governing provisions of the Code of Virginia and the Warren County Code is reversed;

2. These cases are remanded to the Board of Zoning Appeals to consider the Landowners' standing according to the legal principles annunciated in this opinion, and, if it is determined that the Landowners or one of them is an aggrieved party, then to hear their objections to the by-right use decision of the Planning Director and Planning Commission on Roanoke Cement's by-right use application.